48

Mikula, Appellant, v. Slavin Tailors, Appellee.

[Cite as Mikula v. Slavin Tailors (1970),
24 Ohio St. 2d 48.]

(No. 69-324—Decided October 14, 1970.)

50

*Messrs. Lucey & Lucey* and *Mr. Edward C. Lucey,* for appellant.

*Messrs. Jamison, Ulrich, Burkhalter & Hesser, Mr. Robert F. Hesser* and *Mr. William E. Armstrong,* for appellee.

## I.

SCHNEIDER, J. The defendant unsuccessfully requested the trial court to give the following special instruction concerning false testimony of a witness:

"I hereby charge you that if you find from the evidence that any witness has wilfully testified falsely to any material fact, you are free to assume that he or she testified falsely about all matters to which he or she testified, and you are at liberty to disregard the whole or any part of the testimony of such witness."

A *falsus in uno, falsus in omnibus* instruction is permissible, if at all, only where an apparent conscious falsity is uttered by a witness as to a material fact or circumstance. See 3 Wigmore, Evidence (3 Ed.), 680 and 683, Sections 1013 and 1014. Cf. *Mead* v. *McGraw* (1869), 19 Ohio St. 55, the report of which omits the testimony which gave rise to the instruction held to be proper.

Although Mary's testimony concerning her past life suggests a conscious falsity, the biographical facts concerning a period of time totally unconnected with the issues in the case are not material.

In his general charge, following the usual instructions on determining the credibility of witnesses, including the language that "you may disbelieve all of the testimony of a particular witness," the trial judge referred specifically to plaintiff's biographical testimony, explained that it was "not material to any issue of this particular case," and limited its purpose to the credibility and weight of her

testimony. As a whole, that portion of the charge was nearly tantamount to the refused special instruction and was more than defendant was entitled to.

The seeming contradiction between Mary's testimony as to what caused her fall and how she fell, her reputed statement in the hospital record and her signed statement prepared by the insurance investigator, is also not of a character to require the giving of the *falsus in uno* instruction. Seemingly contradictory utterances of a witness do not, per se, establish a conscious falsity. 3 Wigmore, Evidence (3 Ed.), 681, Section 1013. Something more must appear which will permit the jury reasonably to believe that perjury was committed. Annotation, 4 A. L. R. 2d 1077, 1104, Section IV.

Whether, in this case, plaintiff's versions of how she fell are contradictory is a matter of interpretation. Viewed at their worst, however, they do not support a conclusion that she perjured herself.

The trial court's refusal to give the special instruction was proper. The Court of Appeals, therefore, erred in reversing on this issue.

## II.

The Court of Appeals accepted defendant's contention that the trial court committed prejudicial error when it gave a plaintiff-requested special instruction which placed the burden of proof of the issue of contributory negligence on the defendant without qualification.

That special instruction read as follows:

"I charge you as a matter of law that contributory negligence is an affirmative defense and therefore the burden of proof as to such a defense is upon the defendant, and it is necessary for the defendant to prove by a preponderance of the evidence two things:

"First, the defendant must prove that the plaintiff was negligent;

"Second, that such negligence on the part of the plaintiff proximately contributed to the injuries and damages which she sustained.

"The failure of the defendant to prove either one of the two elements stated means that any defense of contributory negligence must fail. In other words, even though you might find from the evidence that the plaintiff was herself negligent, yet such finding will not defeat plaintiff's right to recover unless you further find that such negligence on the part of the plaintiff contributed to her injuries and damages."

The record indicates that the only place where the issue of contributory negligence could arise was in the plaintiff's case. The defendant offered no evidence as to the knowledge or acts of plaintiff.

It is clear then that plaintiff did have the burden to counterbalance any inference of contributory negligence which arose during her case. *Ziebro* v. *Cleveland* (1952), 157 Ohio St. 489; *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Lee* (1924), 111 Ohio St. 391. See *Snyder* v. *Stanford* (1968), 15 Ohio St. 2d 31, 43. For this reason, the trial court should not have given plaintiff's requested special instruction, which did not qualify the defendant's burden of proof. *Greenawalt* v. *Yuhas* (1947), 83 Ohio App. 426, approved.

However, the special instruction in question was erroneous only because it was incomplete. It contained no positive error of law. The jury heard nothing wrong.

Furthermore, the general charge contained a complete and accurate statement of law. It qualified the defendant's burden of proof by instructing that any inference of contributory negligence arising from plaintiff's case must be counterbalanced by the plaintiff. We fail to find any prejudice to the defendant requiring reversal.

The defendant, however, contends that the general charge may not be considered in determining prejudice for the reason that a general charge cannot be utilized to cure error in a special charge, citing *Pittsburgh, Cincinnati & St. Louis Ry. Co.* v. *Krouse* (1876), 30 Ohio St. 222 (paragraph nine of the syllabus); *Wertenberger* v. *State* (1919), 99 Ohio St. 353. See also *Washington Fidelity National*

*Ins. Co.* v. *Herbert* (1932), 125 Ohio St. 591; *Lima Used Car Exchange Co.* v. *Hemperly* (1929), 120 Ohio St. 400. But compare *Deckant* v. *Cleveland* (1951), 155 Ohio St. 498, 505.

We do not agree with the contention in this case for the reason that our recent decision in *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107, reaffirms the policy of R. C. 2309.59[1] that, in order to support the reversal of a judgment, the record must affirmatively show that error intervenes to the prejudice of the party complaining thereof.

*Smith* recognizes that, although an erroneous special instruction cannot be cured by the general charge, no reversal should be granted in the absence of a showing of prejudice. (*Id.,* at 113-14, and the cases there cited.)

The general charge cannot be ignored in determining whether prejudice occurred. As a practical matter, in this case the general charge annulled any prejudice which may have been created by the erroneous special instruction.

---

[1]R. C. 2309.59:

"In every stage of an action, the court must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party. No judgment shall be reversed or affected by reason of such error or defect. In the judgment of any reviewing court upon any appeal in any civil action, when it is sought to reverse any final judgment or decree or obtain a new trial upon the issues joined in the pleadings, such reviewing court shall certify on its journal whether or not in its opinion substantial justice has been done the party complaining, as shown by the record of the proceedings and judgment under review. In case such reviewing court determines and certifies that in its opinion substantial justice has been done to the party complaining as shown by the record, all alleged errors occurring at the trial shall by such reviewing court be deemed not prejudicial to the party complaining and shall be disregarded, and such judgment or decree under review shall be affirmed, or it shall be modified if in the opinion of such reviewing court a modification thereof will do more complete justice to the party complaining. In case such reviewing court determines and certifies that in its opinion substantial justice has not been done to the party complaining as shown by the record, such court shall proceed as provided in Section 2505.37 of the Revised Code."

Defendant makes two additional objections to the form of the special instruction *i. e.*, that the use of the words ''right to recover'' in the last paragraph of the instruction assumed, and misled the jury to believe, that the plaintiff had such a right; and, that the last sentence of the instruction misled the jury into believing that it could not find plaintiff's own negligence to be the sole cause of her injury.

The trial court's acquiesence in the use of the phrase ''right to recover'' was unfortunate. These words can be misleading. A far more appropriate form of instruction can be found in 1 Ohio Jury Instructions, Contributory Negligence, No. 9.11.*

However, even if it could be argued that the instruction assumed that the plaintiff had the right to recover, the court gave other special instructions which made it clear that the jury knew that the question of the plaintiff's right to recover was for its determination. See *Lackner* v. *Burns* (1964), 175 Ohio St. 469, 473; *Centrello* v. *Basky* (1955), 164 Ohio St. 41, 52. The claim that the jury was led to believe that it could not find that plaintiff's negligence was the sole cause of her injury is an unrealistic and strained interpretation of the special instruction, which we reject.

---

²⁴''Contributory negligence is an affirmative defense. Therefore the burden of proving contributory negligence rests upon the defendant.

''However, if you find that plaintiff's evidence gives rise to an inference that his own negligence proximately contributed to his injury then to maintain his cause you must find, considering all the evidence, that such inference is equalled or balanced. If you find that such inference, if any, was not equalled or balanced by all of the evidence, then the plaintiff is contributorily negligent and cannot recover. However, if plaintiff's evidence does not create an inference of his own negligence or, if it does, and it is balanced by evidence of equal weight, the burden of establishing that the plaintiff was negligent and that such negligence proximately caused his injury remains upon the defendant.''

This instruction clearly defines the defendant's burden of proof and does not assume a ''right of recovery'' for the plaintiff.

### III.

The rule of law proposed by defendant is that it had "no legal obligation to a business invitee to remove natural accumulations of snow and ice" from the parking area which it admittedly owned and controlled. If this were the correct rule, defendant's motion for a directed verdict should have been granted. However, as we understand it, its contention before the Court of Appeals was, and here is, that the trial court committed prejudicial error in its general charge on the substantive question of liability.

In *Debie* v. *Cochran* (1967), 11 Ohio St. 2d 38, the defendant was held not liable to a plaintiff-invitee who fell on a natural accumulation of ice and snow on the sidewalk in front of the defendant's store.

We bottomed that rule of non-liability of the property owner for the condition of his premises upon his lack of imputed superior knowledge of that condition. To the extent that a business invitee and the owner of the premises have equal knowledge of the usual dangers resulting solely from natural accumulations of ice and snow, the latter cannot be charged with actionable negligence with regard to such dangers.

However, under the rationale of *Debie,* the owner of business premises has a duty to remove natural accumulations of ice and snow which he knows, or should know, have "created there a condition substantially more dangerous to his business invitees than they should reasonably have anticipated from their knowledge of weather conditions prevailing generally in the area." (Paragraph 1 of the syllabus, *Debie* v. *Cochran, supra,* 11 Ohio St. 2d 38.)

The majority opinion by the late Chief Justice Taft in *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45, reiterates this view. In *Sidle,* a newsboy fell on the natural accumulation of ice and snow on the steps of the defendant's apartment building. The defendant was held not liable upon the theory that the owner of the premises owes the invitee no duty with regard to conditions of the premises

which are obvious and apparent. Natural accumulations of ice and snow, it was said, present obvious dangers from which an invitee can be expected to protect himself. Accord: *Jeswald* v. *Hutt* (1968), 15 Ohio St. 2d 224.

However, this is not to say, nor do *Jeswald, Sidle,* or *Debie* hold, that there is no duty upon a person in control of business premises to remove a natural accumulation of ice and snow which creates a danger which is not obvious, which an invitee thereto cannot reasonably be expected to know, and of which the owner should have superior knowledge.

A deep hole in a parking lot which is filled or covered, or both, by a natural accumulation of snow constitutes a condition, the existence of which the owner of the premises is bound, in the exercise of reasonable care, to know. He is also bound to know that a natural accumulation of snow which fills or covers the hole is a condition substantially more dangerous than that normally associated with snow. The invitee is not bound to anticipate that condition as an ordinary hazard resulting from the snow. He cannot be expected to protect himself from a danger which he cannot reasonably foresee. Under such circumstances, the owner's failure to correct the condition constitutes actionable negligence. The rule may be stated as in the fifth paragraph of the syllabus hereof.

That being the rule of law which should have been, but was not, imparted to the jury, the question finally arises whether the charge as given, to which defendant merely generally excepted, contained an affirmative misstatement of law, *i. e.,* an error of commission, rather than one of omission. If the former, defendant is entitled to the new trial awarded to it by the Court of Appeals. If the latter, the error, and any prejudicial effect thereof, was waived by the general exception.

The cumulative effect of those portions of the general charge which have already been quoted was that the plaintiff might recover if the defendant negligently permitted a dangerous and unsafe condition to exist due

*either* to an "improper accumulation of snow and ice," *or* to "many holes of varying width and length."

The gist of defendant's quarrel with the charge is that it permitted a finding for plaintiff even though the jury might have found against plaintiff on her claim that a snow-covered hole existed into which she stepped. (Notwithstanding there was solid evidence on behalf of plaintiff that a hole existed and that she stepped into it, defendant's evidence squarely controverted this, and thus a clear factual dispute existed.)

The difficulty with this claim (and the Court of Appeals' acceptance thereof), which is based on the decisions in *Debie, Sidle,* and *Jeswald, supra,* is that here the jury was permitted to find for plaintiff by reason of, *not* a *natural* accumulation of snow, but a *dangerous* condition due to an *improper* accumulation of snow.

The trial judge admonished that defendant was not an insurer of the safety of the parking area and was not bound to keep it free from every trivial defect. He defined "conditions which would be dangerous" as "such as might be [sic] reasonably and probably would cause injury to persons using ordinary care walking over it."

The real failure of the charge was that an "improper accumulation" was not defined. In the view of the majority of the court, however, this was an error of omission; serious, indeed, but no more so than if "negligence" or "proximate cause" had been left undefined.

The defendant could have requested a further charge. It did not. Had it done so, it would have been entitled substantially to the language set forth in paragraph six of the syllabus hereof which would have required the jury, in unmistakable terms, to find a hazard, in this case the hole, above and beyond the mere accumulation of snow.

On the other hand, a review of the charge as a whole drives a majority of the court to the conclusion that, on balance, it imparted to the jury the duty of finding the greater hazard and that it would be unreasonable to believe that the jury was actuated into returning its plaintiff's

verdict because she slipped on the snow and not because she stepped into a hole underlying the snow.

The judgment of the Court of Appeals is reversed, and the judgment of the Court of Common Pleas on the verdict is reinstated.

*Judgment reversed.*

HERBERT, DUNCAN and JOHNSON, JJ., concur.[3]
O'NEILL, C. J., and LEACH, J.,[4] dissent.
STERN, J., not participating.

JOHNSON, J., of the Seventh Appellate District, sitting for CORRIGAN, J.

LEACH, J., dissenting. As an academic proposition of law, I would agree with paragraph five of the syllabus, which essentially is a rephrasing of paragraph one of the syllabus of *Debie v. Cochran Pharmacy-Berwick, Inc.* (1967), 11 Ohio St. 2d 38. I also agree that where it is shown that the property owner has "superior knowledge" of the condition causing the injury, he cannot avoid liability merely because a "natural accumulation of ice and snow" adds to the existing danger. I further agree that a "deep hole" in a parking lot, even though partially or even completely filled by a "natural accumulation of ice and snow," may continue to present "a condition more dangerous than that normally associated with ice and snow."

Had the jury in this case been instructed within the framework of this principle of law, I would agree that a verdict in favor of plaintiff would rest upon a legally tenable foundation. The jury was not so instructed. Instead, it was instructed that it could return a verdict in favor of

---

[3] CHIEF JUSTICE TAFT participated in this case which was, however, decided after his death.

[4] LEACH, J., participated in the hearing of this case sitting for MATTHIAS, J.

plaintiff upon a finding that defendant was "negligent in the maintenance of this parking area in *any one* or more of the *respects claimed* by plaintiff in her petition"; that she need not prove "each of the allegations of negligence set forth in her petition," but that "it is sufficient for * * * [plaintiff] to recover if you find * * * that * * * [she] was directly and proximately caused injury as the result of *any one* or more of the *allegations* of negligence in her petition."

There were *two* "allegations of negligence" in plaintiff's petition. The first made no reference whatsoever to the existence of any hole or holes, but instead was based entirely upon the legal theory that any "improper accumulation" (leaving entirely to the jury the question of whether any particular accumulation was "improper") of snow and ice which is permitted to exist and remain "for a considerable time after notice" is negligence, supporting a recovery of damages.

By these instructions, the jury, in effect, was told that even if it concluded that there were no holes in the area (such claim being the basis of the second "allegation of negligence") it nevertheless could return its verdict in favor of plaintiff if it found the accumulation "improper" and to have remained for a "considerable time" after notice. Thus, the jury was permitted to return a verdict in favor of plaintiff based on a theory of law rejected by this court in *Debie* v. *Cochran Pharmacy-Berwick, Inc., supra* (11 Ohio St. 2d 38); *Sidle* v. *Humphrey* (1968), 13 Ohio St. 2d 45; and *Jeswald* v. *Hutt* (1968), 15 Ohio St. 2d 224. We cannot assume that it did not do so merely because there was another possible basis upon which it could base a verdict.

It might be observed that the trial of this cause took place prior to the decisions of this court in *Debie, Sidle* and *Jeswald.* The position of counsel for plaintiff was, and to a degree still is, that where the landlord in his lease agreement with his tenants assumes the duty of maintenance, including removal of ice and snow, a business invitee of a

tenant may maintain an action based solely upon failure to so remove such ice and snow. It is claimed that this position is supported by the holding of this court in *Oswald* v. *Jeraj* (1946), 146 Ohio St. 676. There, it was held that a *tenant* could recover from the landlord damages for her own personal injury due to a slip on ice where the landlord had assumed the duty of maintenance and snow removal. However, as observed in *Debie*, and as specifically held in *Sidle*, such retention of control and assumption of duties by the landlord does not create a cause of action in favor of a business invitee of a tenant against the landlord. In my opinion, the jury instruction here authorized the jury to return a verdict based upon such nonexisting "cause of action."

The majority opinion, seemingly acknowledging that the action of the trial court in this respect was erroneous, defines it as an "error of omission." I do not agree. The specific statement of the court in my opinion was an error of commission.

In my opinion, therefore, the third reason set forth by the Court of Appeals for reversing and remanding is correct, and I would affirm on such basis and remand the cause for new trial.

I agree that the first reason given by the Court of Appeals for its judgment of reversal was erroneous. My reasoning, however, is different from that stated in the majority opinion. Upon the basis that the testimony was not concerned with a "material fact" or that a "conscious falsity" was not established, the majority reaches the conclusion that the contradictions and alleged contradictions in plaintiff's testimony were "not of a character to *require* the giving" of such instruction.

By implication, therefore, the majority would seem to accept the proposition that where the *court* determines, as a matter of *fact*, that the testimony on a "material issue" is "willfully false and given with an intention to deceive" a court is then *required* to instruct the jury in accordance with such a request.

In my opinion, instructions of this nature should never be required, even where the contradictions involve "material facts" and "willful falsity." Such instructions do not involve any "rule of law." *Mead* v. *McGraw* (1869), 19 Ohio St. 55. In my view, they serve only to place the court in psychological support of the argument to the jury by counsel attacking or discounting the credibility of the witness upon such basis.

I recognize that instructions of this nature have historical roots in the common law—at common law a judge was permitted to "comment upon the evidence"—and thus in effect aid or guide (but not command) the jury in its factual conclusions, as well as its application of the facts to the law. In states, such as Ohio, where such "comment upon the evidence" is not permitted, this type of charge nevertheless is sometimes given and left-handedly "approved" on appeal upon the basis that the giving thereof was not "prejudicial." Such thereafter is submitted to a trial judge as a special instruction under the once prevalent, but now discarded, doctrine that if an instruction *could* properly be given, a refusal to so charge constituted prejudicial error. *Smith* v. *Flesher* (1967), 12 Ohio St. 2d 107. In my opinion, exactly that happened here. The Court of Appeals, apparently concluding that the requested charge could have been given, then concluded that it should have been given and that it was prejudicial error not to give it.

I would make clear that instructions of this nature, although they sometimes may be given without necessarily resulting in prejudice, *should* not be given, and are never *required* to be given.

O'NEILL, C. J., concurs in the foregoing dissenting opinion.