[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Plaintiff-appellant Jack B. Pacey appeals from a summary judgment rendered in favor of defendant-appellee Penn Garden Apartments, in Pacey's slip-and-fall action. Pacey argues that the trial court erred in rendering summary judgment, since material issues of fact remain in this case regarding whether Penn Garden owed its business invitees, like himself, a duty to remove ice and snow from its walkways, and whether Penn Garden can be held liable for an allegedly defective condition on the portion of the walkway where Pacey fell.
We conclude that Penn Garden had no responsibility to remove from its walkway a patch of ice that may have caused Pacey's fall, since the patch of ice was the result of natural accumulation, and there was no evidence that that natural accumulation of ice created a condition on Penn Garden's premises that was substantially more dangerous than Pacey could have anticipated, given the weather conditions prevailing on the day he fell. We further conclude that the alleged defect on the walkway — small concrete pebbles — that Pacey claims to have caused his fall, constitutes a minor defect, and the attendant circumstances surrounding the incident were insufficient to elevate that minor defect into a substantial one, for which Penn Garden could be held liable. Accordingly, the judgment of the trial court is Affirmed.
 I
In January, 1997, Pacey slipped and fell on the sidewalk of Penn Garden Apartments, injuring his right arm, hip, and other parts of his body. According to his deposition testimony, Pacey arrived at the apartment complex at approximately 11:00 a.m. on the day of the incident. Pacey went there to visit his friend, Timothy Nelson. Nelson lived at Penn Garden Apartments, and was employed there as a maintenance worker. Pacey remembers visiting with Nelson for about 30 minutes. As he was returning to his car to leave, Pacey fell on the sidewalk. Pacey called out to Nelson for help. Timothy Weneck, another maintenance worker at Penn Garden, who, at that moment, was salting the sidewalks of the apartment complex, heard Pacey's call for help, and went over to assist him. Nelson and Weneck took Pacey to the office of the apartment complex, where an ambulance was called. Nelson testified in his deposition that as he and Weneck were taking Pacey to the office, Pacey indicated to him that he had fallen on some ice.
In July, 1997, Pacey was questioned about the incident by a representative from Penn Garden's insurer, American States Insurance Company, as follows:
Q. And what caused you to fall?
 A. My opinion, like I told the doctor at the hospital, and everything else, that it must be the little ugh, concrete that was broken. Cause [sic] there was very little snow, I mean ice on, on that side, hardly any ice on the side, on the one fell on [sic]. Ice on the sides yes, in the middle, no. But a lot of crumbly concrete, so ugh, that's what I saw, what I told the doctor * * *.
* * *
 Q. O[kay], so you say that, that there was only ice on the side of the sidewalk?
A. Yes sir.
Q. And there was no ice in the center?
A. No sir.
Q. And that the sidewalk was crumbling, the concrete?
A. Yes sir.
 Q. Can you describe the concrete crumbling? What do you mean it's crumbling?
 A. Like in the center, like, ugh, it was breaking away and little tiny balls of concrete on the sidewalk.
Q. O[kay], did you notice these when you walked in?
A. Yes sir.
Q. And you noticed them when you walked out?
A. Yes sir.
 Q. O[kay], and you didn't slip on the ice, you slipped because of the concrete?
A. Yes sir.
In September, 1997, Pacey filed a complaint against Penn Garden in the Common Pleas Court of Montgomery County, alleging that, among other things, Penn Garden had failed to maintain its premises in a reasonably safe condition, thereby causing him to fall and seriously injure himself.[1]
During Pacey's deposition, counsel for Penn Garden questioned Pacey about the incident as follows:
Q. What caused you to fall?
 A. "I think the pebbles on the sidewalk. No thinking, I know. The pebbles on the sidewalk."
* * *
Q. Do you think that you slipped and fell on ice?
A. No sir.
 Q. Do you think that there was any accumulation of ice on the sidewalk that caused you to slip and fall?
A. No sir.
 Q. Do you think that there was an accumulation of any snow on the sidewalk which caused you to slip and fall?
A. There was definitely no snow.
Pacey further testified that the pebbles evidently had been produced by the crumbling of the concrete sidewalk. Pacey described the pebbles as "real tiny" and "real small," and stated there were "quite a few" of them in the middle of the square of the sidewalk upon which he fell. Pacey also testified that he did not see the pebbles until after he had fallen, thereby contradicting his earlier statements made to Penn Garden's insurance company. When the issue of causation was again brought up later in the deposition, Pacey began equivocating about the cause of his fall:
 A. And what caused it, I don't know. I really don't know whether I, the pebbles would have caused it. I know that around the edges to my — now again I'm guessing, there looked like there was a very little bit of ice, because the sun was out that time of day.
 Q. Okay. I don't want you to guess and I don't want you to speculate. Because you already told me * * * that snow and ice had no part in this.
A. No, no snow at all.
Q. Okay. So I don't want to guess about that.
A. All right.
* * *
 Q. * * * Now what, what was it about those pebbles on the sidewalk that caused you to fall; I mean were they slick?
 MR. MANNING [Pacey's attorney]: Do you understand what he's asking you?
 THE WITNESS: You know, what caused, what caused me to fall is exactly what he's asking me.
 MR. MANNING: In other words did you slip on them like marbles, did they cause you to fall?
 MR. OXLEY [Penn Garden's attorney]: Other than the fact that your attorney is now giving you some language to use.
THE WITNESS: No, no.
 MR. MANNING: What about the pebbles caused you to fall is what he's asking.
 THE WITNESS: Let me say this to both of you, sir. It happened so rapidly, before I knew it I was on the ground, I was moaning and groaning and everything else, and I said I broke my arm. I don't know. I wore sneakers like he wears sneakers, like you wear sneakers, like everybody wears sneakers. I was under the assumption they had good tread on them, but obviously they did not. I don't know what caused me to fall, I'm not going to lie, but I fell. I couldn't move. I couldn't get up or anything like that.
Nelson stated in his deposition that the incident occurred around 9:00 a.m to 9:30 a.m., rather than around 11:30 a.m., as Pacey had indicated. Nelson also stated that, contrary to Pacey's recollection, he did not see Pacey on the morning of the incident until after he (Pacey) had fallen. Nelson stated that he did not see any ice or pebbles in the area where Pacey fell.
Weneck stated in his deposition that the accident occurred around 9:00 a.m. to 9:30 a.m. Although Weneck stated that he did not see any pebbles on the portion of the sidewalk where Pacey fell, he did observe "one small icy spot" there. Weneck further stated that the portion of the sidewalk where Pacey fell was in good condition aside from that patch of ice. Weneck also stated that as of the time of the incident, he had not yet salted the section of the sidewalk where Pacey fell.
Paul Hutchins, who owns shares in the company that owns Penn Garden, stated in his deposition that Weneck showed him the area where Pacey fell. Hutchins stated that while there was ice and snow on parts of the sidewalk, there was no ice, snow, or debris on the portion of the sidewalk where Pacey fell.
In March, 1998, Penn Garden moved for summary judgment. Pacey responded by filing a memorandum in opposition. Attached to Pacey's memorandum in opposition was a transcript of the interview Pacey gave to Penn Garden's insurance company. Penn Garden filed a reply to Pacey's memorandum in opposition, as well as a motion to strike the transcript of Pacey's interview with its insurance company on several grounds, including that the transcript was inadmissible hearsay. Pacey responded by filing a memorandum in response to the motion to strike, to which he attached his own affidavit, stating that the statements made in the transcript of his interview were "a true and accurate statement of the events of this case."
The trial court overruled Penn Garden's motion to strike, but granted its motion for summary judgment. Specifically, the trial court found that assuming Pacey's fall was caused by the patch of ice mentioned by Weneck, the patch of ice nevertheless constituted a natural accumulation of ice, for which Penn Garden could not be held liable as a matter of law. The trial court further found that assuming Pacey's fall was caused by the tiny concrete pebbles on the sidewalk, Penn Garden was still entitled to judgment as a matter of law, since the defect was insubstantial, and there were no attendant circumstances that elevated it into a substantial one.
Pacey now appeals from the summary judgment rendered against him.
 II
Pacey's First Assignment of Error states:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY CONCLUDING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT, AND BY FURTHER HOLDING THAT APPELLEE WAS NOT RESPONSIBLE FOR REMOVING ICE AND SNOW UNDER OHIO LAW.
Summary judgment is appropriate when there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, which is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,67. A party seeking summary judgment on the ground that his opponent cannot prove his case has the initial burden of pointing out the basis for his motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on one or more essential elements of his opponent's case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293. Once the moving party meets his initial party, the nonmoving party must then point to some evidence in the record showing the existence of a material fact, and not simply rely on the allegations or denials in his pleadings. Id.; Civ.R. 56(E). If the moving party meets its initial burden, and the nonmoving party fails to meets its reciprocal burden, summary judgment is appropriate.
Pacey asserts that a genuine issue of material fact remains regarding whether Penn Garden had a duty to remove the ice and snow from its sidewalks by the time he arrived at the apartment complex. Penn Garden counters by pointing out, correctly, that Pacey denied that he had slipped and fallen because of any ice or snow, before ultimately professing ignorance about the cause of his fall. Penn Garden argues that since Pacey cannot identify the cause of his fall, then he cannot prevail on his negligence claim, and the grant of summary judgment should be affirmed on that basis alone. We disagree with Penn Garden's assertion.
"When the cause of a fall cannot be identified, a finding of negligence is precluded." Russell v. Creatif' Catering, Inc.
(Dec. 4, 1998), Montgomery App. No. 17031, unreported, citingStamper v. Middletown Hosp. Assn. (1989), 65 Ohio App.3d 65,67-68, and Harshaw v. Trotwood Foodtown, Inc. (Jan. 24, 1996), Montgomery App. No. 15125, unreported. However, many victims of slip and fall accidents will not be able to identify what caused them to fall, particularly where they are injured seriously, and require immediate medical attention. The question in those cases is whether there is any evidence from other witnesses regarding the cause of the fall. If there is, then a finding of negligence is not precluded.
Here, after expressing certainty that his fall was caused by small, concrete pebbles, Pacey finally stated that he did not know what had caused his fall. Nevertheless, Weneck testified that there was a patch of ice in the area where Pacey fell. Thus, looking at the evidence in the light most favorable to Pacey, it can be reasonably inferred from the evidence that Pacey may have slipped and fallen on the patch of ice observed by Weneck. Cf.Stampfer, supra (the record is devoid of any evidence indicating the cause of the fall), and Russell, supra (only testimony about the fall came from plaintiff, who was unable to say why she fell). Accordingly, this is not a case where the cause of the fall cannot be identified.
Both parties agree, and the trial court correctly found, that Pacey had the status of a "business invitee" at the time of the incident. See, generally, Crane v. Lakewood Hosp. (1995),103 Ohio App.3d 129, 136 (person who slipped and fell at hospital while visiting a patient there had status of business invitee of hospital). An owner or occupier has a duty to exercise ordinary care to maintain his premises in a reasonably safe condition.Boles v. Montgomery Ward Co. (1950), 153 Ohio St. 381, paragraph one of the syllabus. Generally, a premises owner "owes no duty to business invitees to remove natural accumulations of ice and snow from the private sidewalks on the premises, or to warn the invitee of the dangers associated with such natural accumulations of ice and snow." Brinkman v. Ross (1993), 68 Ohio St.3d 82,83. This rule is founded on the notion that the owner and his invitee have "equal knowledge of the usual dangers resulting solely from natural accumulations of ice and snow."Mikula v. Slavin Tailors (1970), 24 Ohio St.2d 48, 56. Put another way, "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by natural accumulations of ice and snow." Brinkman, supra, at 84.
However, an owner does have a duty to remove from his premises "unnatural" accumulations of ice or snow, or natural accumulations of ice or snow that have created a condition on his premises, which the owner is aware of or, in the exercise of reasonable care, should be aware of, and which is substantially more dangerous to his business invitees than they should have anticipated by reason of their knowledge of weather conditions prevailing generally in the area. Mikula, supra, at 56-57. The rationale behind these exceptions to the general rule of non-liability is that an invitee cannot be expected to protect himself from a danger which he cannot reasonably foresee; on the other hand, the owner, who has, or can be imputed to have, superior knowledge of the danger, should take steps to remedy the dangerous condition. See Id. at 57.
Here, Pacey concedes that there was not an unnatural accumulation of ice or snow on the walkways of the Penn Garden Apartments on the morning of the incident.
Nevertheless, Pacey asserts that Penn Garden knew or should have known that the patches of ice and snow that were present on the sidewalks of the apartment complex created a condition substantially more dangerous than he could have reasonably anticipated. Specifically, Pacey points to Weneck's testimony indicating that he (and, therefore, Penn Garden) knew there were patches of snow and ice on the sidewalk for at least one hour before the incident. Thus, Pacey argues, Penn Garden was negligent in failing to remove the ice and snow from their walkways. We disagree.
The undisputed evidence showed that it had snowed the night before the incident, and there were patches of snow and ice on the walkways of the apartment complex. Pacey himself acknowledged in his statement to Penn Garden's insurer that he saw ice on the sidewalks of the apartment complex (though not in the area where he fell) when he arrived there on the morning of the incident, which occurred in January. Under these facts, the law in this state imputes to Pacey knowledge of the dangers resulting from the natural accumulation of ice that may have caused him to fall; thus, Pacey's knowledge of the danger posed by the natural accumulation of ice was no greater than Penn Garden's knowledge of the danger.
Furthermore, the fact that Penn Garden may have known about the patch of ice for one hour or more prior to Pacey's fall did not give it superior knowledge of the dangers resulting from the natural accumulation of ice. As the Ohio Supreme Court has stated, "[t]he mere fact standing alone that the owner or occupier has failed to remove natural accumulations of snow and ice from private walks on his business premises for an unreasonable time does not give rise to an action by a business invitee who claims damages for injuries occasioned by a fall thereon." Debie, supra,
at paragraph two of the syllabus. Instead, it must be shown that: (1) the natural accumulation of snow or ice combined with some other circumstance to create a condition that was substantially more dangerous to business invitees than they should have anticipated by reason of their knowledge of weather conditions generally prevailing in the area; and (2) the premises owner knew or, in the exercise of reasonable care, should have known about the condition. See, Mikula, supra, paragraphs five and six of the syllabus, and at 56-57 (deep hole in parking lot covered by natural accumulation of snow constitutes a condition which premises owner should have known about and invitee could not have reasonably foreseen; thus, owner's failure to remedy condition constitutes actionable negligence).
Pacey also argues that a triable issue of fact remains regarding whether Penn Garden assumed a duty to remove ice and snow from its sidewalks through an implied course of conduct. In support of this argument, Pacey cites Garden Woods Apartments v.Gee (Sept. 27, 1993), Montgomery App. No. 13962, unreported, wherein this court, citing Hammond v. Moon (1982), 8 Ohio App.3d 66, stated that a landlord may assume the duty to remove ice and snow either by an express agreement or by an implied course of conduct. However, this principle has no application to the case before us.
Initially, this court has recently sought to distance itself from the principle contained in Hammond and its progeny, on the grounds that imposing a duty on landlords to remove ice and snow through an "implied course of conduct" theory would discourage landlords from ever attempting to remove ice and snow from the common areas of their premises as a courtesy to their tenants, and would, therefore, make those areas less safe. Community Ins. Co.v. McDonald's Restaurants of Ohio, Inc. (Dec. 11, 1998), Montgomery App. No. 17051, 17053, unreported. More importantly in the case before us, no "implied course of conduct" could have developed between Pacey and Penn Garden, since, according to the statement he gave to Penn Garden's insurance company, Pacey had never been to the apartment complex on any previous occasion. Thus, unlike one of Penn Garden's tenants or frequent visitors, Pacey never developed any reliance on Penn Garden's past efforts to remove ice and snow.
Pacey's First Assignment of Error is overruled.
 III
Pacey's Second Assignment of Error states:
 THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION FOR SUMMARY JUDGMENT BY HOLDING THAT APPELLEE WAS NOT RESPONSIBLE FOR DEFECTS IN THE SIDEWALKS.
Pacey argues the trial court erred by determining that the pebbles on the sidewalk constituted an insubstantial defect. In support of this argument, Pacey points to Weneck's deposition testimony indicating that the sidewalks had not been swept since the previous September or October. Pacey also faults the trial court for not considering all relevant attendant circumstances in determining whether the defects were substantial or trivial. We find Pacey's argument unpersuasive.
In Helms v. American Legion, Inc. (1966), 5 Ohio St.2d 60, syllabus, the court stated:
 [t]he owners or occupiers of private premises are not insurers of the safety of pedestrians traversing those premises, and minor or trivial imperfections therein, which are not unreasonably dangerous and which are commonly encountered and to be expected, as a matter of law do not create liability on the part of such owners or occupiers toward a pedestrian who, on account of such minor imperfections, falls and is injured.
If a court concludes that a defect is minor, it should nevertheless consider all attendant circumstances surrounding the fall. Cash v. Cincinnati (1981), 66 Ohio St.2d 319, 323-324. Attendant circumstances surrounding an incident might increase the danger posed by the minor defect to the extent that the minor defect is elevated into a substantial one. See Stockhauser v.Archdiocese of Cincinnati (1994), 97 Ohio App.3d 29, 33. However, "[t]o render a minor defect substantial, attendant circumstances must not only be present, but must create `a greater than normal, and hence substantial, risk of injury.'" Id., quoting Turner v.Burndale Gardens Co. (Dec. 18, 1991), Montgomery App. No. 12807, unreported. If the attendant circumstances taken together significantly enhance the danger of the defect and contribute to the fall, then the otherwise minor defect may be deemed substantial. Stockhauser, supra, at 33-34.
Here, the "real tiny, real small" concrete pebbles described by Pacey were consistent with the natural erosion common to all concrete sidewalks. This type of trivial imperfection is commonly encountered by all pedestrians and, therefore Penn Garden cannot be held liable for it as a matter of law, even though its maintenance workers had not swept the sidewalk for several months prior to the incident. Furthermore, there are no attendant circumstances present which would have elevated this trivial imperfection into a substantial one. As the trial court noted, the incident occurred during daylight, there was nothing obstructing Pacey's view, and there was no evidence of any pedestrian traffic at the time of Pacey's fall. Cf. Cash, supra,
at 324 (the attention of pedestrian who tripped and fell in depression located near a busy intersection was understandably diverted by rush hour traffic).
Pacey mentions that the "weather" and "natural deterioration" are two other factors which can constitute attendant circumstances. However, the pebbles themselves constitute natural deterioration; they cannot serve as both the defect and an attendant circumstance. Moreover, while there was testimony from a Penn Garden employee that there was a patch of ice (but no pebbles) in the area where Pacey fell — a fact which Pacey's own testimony contradicts — there is no evidence in the record to show, nor does Pacey otherwise attempt to explain, how the possible presence of the ice increased any danger presented by the pebbles to such an extent that it elevated that minor defect into a substantial one.
Pacey's Second Assignment of Error is overruled.
 IV
Both of Pacey's assignments of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Thomas J. Manning
Gractia S. Davis
Scott G. Oxley
Julie A. Droessler
Hon. David Gowdown
[1] Pacey also added a count in his complaint stating that United Healthcare of Ohio had paid for some of his medical bills and other expenses, and, therefore, might have a right of subrogation, entitling it to recover those payments from Penn Garden.