OPINION
Robert and Angela Bond appeal from a jury verdict awarding them $6,000 on their claims for relief arising from injuries that the Bonds sustained as a proximate result of Yvonne Mercer's negligence. Mercer cross-appeals from the trial court's denial of her motion for a judgment notwithstanding the verdict.
The facts are uncontested. At the request of his brother-in-law, Robert Bond went to Mercer's home on June 18, 1996, to investigate problems that Mercer was having with her air-conditioner. Mercer showed Bond to her cellar, an eight by eight foot room that contained a furnace, water heater, water softener, shelves, and a bench on which cans of spray paint were stored. Bond saw that the cans were there. After Mercer left the cellar, Bond began to remove the furnace's sheet metal to examine the coil.
Bond bumped the bench containing the spray paint cans, knocking some of the cans to the floor. One of the cans broke open, spewing fumes throughout the cellar. A spark from a pilot light in the furnace ignited the fumes. The resulting flames engulfed Bond, who ran out of the cellar and doused the flames with a garden hose. Mercer called 911, and an ambulance transported Bond to the hospital.
Bond was treated upon admission to the hospital by Dr. Sidney Miller. In his deposition testimony, Dr. Miller stated that approximately twenty percent of Bond's total body was burned. A portion had third degree burns, with the majority being second degree burns. Bond's pain was controlled with intramuscular morphine injections and oral pain medication. As part of his treatment, Bond was washed twice daily. His wounds were cleaned and treated with topical antibiotic agents and dressings and superficial tissue was debrided.
Bond was released after seventeen days in the hospital. After his discharge, Angela Bond cared for her husband at home, changing his dressings and basically doing everything for him because he was bed-ridden.
On January 24, 1997, the Bonds filed a complaint in Montgomery County, alleging that Mercer's negligence proximately caused the injuries and losses they suffered and seeking damages for medical expenses, lost wages, pain and suffering, and loss of consortium. On July 29, 1997, Epic Insurance, which had paid Bond's medical expenses, filed a motion to intervene and a complaint. The trial court never ruled on Epic's motion. Mercer filed a motion to change venue, which was granted. The case was transferred to Clark County Common Pleas Court.
A trial was held on March 8, 1999. The parties stipulated that Epic Insurance had paid $43,790.97 of Robert Bond's medical expenses. The Bonds offered a letter from his employer indicating that Robert Bond was unable to work from June 19 to September 3, 1996, a total of 52 days. The letter reported lost wages of $5,374.72, to which the parties also stipulated. Robert Bond testified that his out of pocket medical expenses totaled $1,200. Mercer did not contest those out of pocket medical expenses.
Mercer moved for a directed verdict at the end of the Bonds' case in chief. The trial court overruled the motion. The jury returned a verdict in favor of Robert Bond in the amount of $7,000 and Angela Bond in the amount of $3,000. The jury also found that Robert Bond was chargeable with 40% of the negligence involved, reducing the Bond's joint award to $6,000.
On May 24, 1999, the Bonds and Epic filed a motion for a new trial on the issue of damages or, in the alternative, for additur, arguing that the jury verdict was against the manifest weight of the evidence. Mercer filed a motion for judgment notwithstanding the verdict on that same day, arguing that she could not be liable as a matter of law because Robert Bond had equal or superior knowledge of the risks presented by the spray paint cans. On June 11, the trial court denied both motions.
The Bonds filed a timely notice of appeal. They seek a reversal on the issue of damages, or, in the alternative, additur. Epic did not appeal. Mercer timely filed a notice of cross-appeal, arguing that the trial court erred in not granting her motion for judgment notwithstanding the verdict. We will address Mercer's cross-appeal first.
Mercer's sole assignment of error on cross-appeal states:
 THE TRIAL COURT ERRED IN DENYING MERCER'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
Civ.R. 50 permits a party to move for judgment in its favor notwithstanding the verdict of the jury. When ruling on a motion for judgment notwithstanding the verdict, a trial court must assume that the evidence produced by the adverse party is true.Posin v. A.B.C. Motor Court Hotel (1976), 45 Ohio St.2d 271, 275. The trial court can grant the motion only where it concludes that the adverse party failed to prove all essential elements of the claim for relief presented. Peters v. BF Transfer Co. (1966),7 Ohio St.2d 143.
Mercer argued in support of her motion for judgment n.o.v. that Bond had knowledge of the risk that the spray paint cans presented and that his knowledge was superior to hers. Bond testified that he saw the cans when he went into the basement. He also testified that he had experience in the repair of furnace and air-conditioner systems. Mercer, on the other hand, testified that she was unaware that the cans were in the basement. They were left there by her late husband, who had died eight years before, and Mercer took no steps after her husband's death to dispose of articles such as these that he had accumulated.
An owner or occupant of land owes a person who enters the land as his invitee a duty to make conditions on the land reasonably safe and to conduct any operations thereon with reasonable care for the invitee's safety. In order to discharge that duty, the owner or occupant must inspect the premises to discover any hazardous conditions which exist there. When a hazard exists of which the owner knows or in the exercise of his duty of discovery reasonably should have known, he owes a duty to the invitee to rid the premises of the condition from which the hazard arises or warn the invitee of the existence of the hazard so that he may protect himself from its risks. Whether an owner or occupant acted with reasonable care in those respects is a question of fact. Gregg v. Kroger Co. (April 19, 1991), Champaign App. No. 90CA12, unreported.
An owner or occupant's breach of the duty he owes an invitee exposes the owner or occupant to liability in damages for any injuries which the invitee suffers as a proximate result of the owner's breach. The owner or occupant may avoid liability by proving that the invitee had actual knowledge of the hazard involved sufficient to protect himself from it by exercising reasonable care for his own safety, which is a duty that the law imposes on invitees.
Where the existence of a particular hazard is manifest from the nature of the condition from which it arises, and the condition itself is open and obvious, an owner or occupant of land is excused from his duty to remove the condition or warn his invitees of the hazards it presents. That rule of non-liability is based on the lack of any knowledge of the hazard which the law imputes to landowners in that situation which is superior to the knowledge it imputes to invitees. Stated otherwise, to the extent that the invitee and the owner have equal opportunities to know of the condition and the dangers usually resulting from it, no superior knowledge of the hazard imposes any duty on the landowner to protect the invitee will be imputed. Mikula v. Tailors (1970),24 Ohio St.2d 48.
The "open and obvious" rule of non-liability has frequently been applied to relieve a landowner of liability to an invitee for injuries and losses that proximately resulted from a fall that the invitee suffered when he slipped on accumulated snow and ice.Debie v. Cochran Pharmacy-Berwick, Inc. (1967), 11 Ohio St.2d 38.Sidle v. Humphrey (1968), 12 Ohio St.2d 45. La Course v. Fleitz
(1986), 28 Ohio St.3d 209. Even then, however, the owner or occupant may have a duty to remove snow which he knows, or should know, has "created there a condition substantially more dangerous to his . . . invitees than they reasonably should have anticipated from their knowledge of weather conditions prevailing generally in the area." Paragraph one of the Syllabus, Debie v. CochranPharmacy-Berwick, Inc., supra. That rule has been applied to create an exception to a landowner's non-liability when accumulated snow concealed a pothole in a parking lot into which a pedestrian stepped and fell. Mikula v. Tailors, supra.
Mercer has seized on the foregoing rule of non-liability to argue that she cannot be held liable for the injuries that Bond suffered because she lacked any knowledge of the hazard from which those injuries resulted and/or that she lacked any knowledge of the hazard that was superior to Bond's, citing La Course v.Fleitz, supra. She also contends that a superior knowledge of the hazard cannot be imputed to her because she and Bond had equalknowledge of the condition involved, citing Mikula v. Tailors,supra. We do not agree.
The cases that Mercer relies on are ones in which thecondition which was as open and obvious to the invitee as it was to the landowner are cases involving accumulations of snow and ice. Because the hazards to pedestrians which that condition presents are manifest from its nature, the law imputes no superior knowledge to the landowner of the existence of those hazards. Here, on the other hand, while the condition involved, the spray paint cans, was one which was not only open and obvious but seen by Bond, the hazard they presented was not manifest from the nature of that condition. Unlike the unquestionably slippery properties of accumulated snow and ice, it is much less certain that spray paint cans will spew flammable fumes if they fall to the floor. Indeed, they should not if they are properly functioning. In this instance one or more may have malfunctioned because their design safeguards had deteriorated with age. If so, the cans were a condition substantially more hazardous to Bond that he reasonably should have anticipated. Debie v. CochranPharmacy-Berwick, Inc., supra.
Mercer cannot avoid the superior knowledge of the existence of the hazard that proximately resulted in Bond's injuries which the law imputes to her as the owner and occupant of the premises, notwithstanding the fact that Bond knew of the condition from which the hazard arose. Mercer herself may have been unaware of the cans, as she claimed. However, and especially as they were there for at least eight years, a jury could reasonably find that Mercer breached her duty to discover the cans and the hazard which they presented. Therefore, the trial court did not err when it overruled Mercer's motion for judgment n.o.v.
Mercer's assignment of error on cross-appeal is overruled.
The Bonds' second assignment of error on appeal state:
 THE TRIAL COURT ABUSED ITS DISCRETION IN OVERRULING PLAINTIFFS' MOTION FOR NEW TRIAL OR, ALTERNATIVELY, FOR ADDITUR.
The Bonds argue that the trial court abused its discretion when it overruled their motion for a new trial on the issue of damages. They do not take issue with the jury's decision to reduce their award of $10,000 by 40% upon a finding that Robert Bond was chargeable with that portion of the negligence involved. The Bonds take issue with the adequacy of the damage award itself.
A trial court should grant a new trial when an award to a plaintiff is so inadequate that the plaintiff is denied justice.Miller v. Irvin (1988), 49 Ohio App.3d 96, 98. A reviewing court may reverse a trial court's denial of a motion for new trial on those grounds only where the trial court abused its discretion.Yungwirth v. McAvoy (1972), 32 Ohio St.2d 285. An abuse of discretion is demonstrated when the trial court has acted unreasonably, arbitrarily, or with an unconscionable attitude.Poske v. Mergl (1959), 169 Ohio St. 70.
"The purpose of a civil trial is to fully compensate the injured party for his losses." Miller, supra, at 98. Compensatory damages, which are intended to make a plaintiff whole, compensate for medical expenses, loss of wages, and pain and suffering. Id.
The Bonds' claims were for pain and suffering, medical expenses, lost wages, and loss of consortium. The jury awarded Angela Bond $3,000 on her loss of consortium claim. It awarded Robert Bond $7,000 on the remaining claims.
No special interrogatories were submitted to the jury to explain the components of its damages award. Mercer argues that this omission prevents us from knowing how the jury structured its award to Robert Bond, which is necessary if we are to determine whether the award or any part of it is so inadequate that the trial court abused its discretion when it overruled their motion for a new trial on the issue of damages. We do not agree. If the total of the damage award closely corresponds to the undisputed evidence of the Plaintiff's losses with respect to every claim save one, then a court may reasonably conclude that the amount of damages remaining, if any, was awarded for that one claim.
Robert Bond testified that he suffered pain as a result of the burns and that the treatments he underwent at the hospital for the burns were painful. Dr. Miller confirmed that Robert Bond was in pain when he was admitted to the hospital and that the treatment for the burns is very painful. Bond further testified that he was prescribed Percocet for pain upon his discharge.
Robert and Angela Bond testified that Robert Bond had difficulty walking when he was discharged from the hospital. He could not move his hands, go to the bathroom by himself, or dress himself. Bond also testified that his wife had to apply prescribed creams and bandage him because he could not form a fist. They both testified that Robert Bond suffered severe itching while his skin was healing.
The parties stipulated that Epic Insurance had paid Robert Bond's medical bills. We can reasonably infer that the jury concluded Robert had been compensated for $43,790.97 of his medical expenses and thus declined to include those medical expenses in its award.
The jury awarded Robert Bond $7,000 in compensation on his remaining claims. The stipulated $5,374.72 in lost wages and undisputed $1,200 in out of pocket expenses, which total $6,574.72, lead us to conclude that the jury awarded Robert Bond the difference of $425.28 on his only remaining claim, which was for pain and suffering.
The trial court overruled the Bonds' motion for a new trial on the issue of damages, stating that "the issues raised . . . were questions of fact that were present (sic) and decided by a jury and the decision of the jury will not be disturbed by this court." (Entry, June 11, 1999). This analysis ignores the grounds for a new trial in Civ.R. 59(A)(4): "Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice."
Whether passion or prejudice intervened is difficult to determine. However, where the amount awarded cannot be reconciled with the undisputed evidence in the case and is so inadequate as to shock the conscience, the intervention of passion and prejudice which undermines a fair verdict is apparent. Then, the court abuses its discretion when it denies a motion for new trial on the issue of damages.
Given the evidence presented at trial, the amount the jury awarded to compensate Robert Bond for his pain and suffering cannot be reconciled with the uncontested evidence of his ordeal and shocks the sense of justice and fairness which the law charges juries to bring to their deliberations. The intervention of passion and prejudice is manifest from the amount of damages awarded. The jury award thus is inadequate, and the trial court abused its discretion in denying the Bonds' motion for a new trial on the issue of damages.
The trial court, however, did not err in failing to order an additur. In the absence of agreement of the parties to an additur, a trial court may not order an additur. Slivka v. C.W.Transport, Inc. (1988), 49 Ohio App.3d 79. Where the record reflects that a damage award is inadequate and the parties cannot agree on additur, the proper remedy is to grant a new trial. See
30 Ohio Jurisprudence 3d (1999) 200, Damages, Section 162.
The Bonds' second assignment of error is sustained in part and overruled in part.
The Bonds' first assignment of error on appeal states:
 THE JURY'S AWARD OF ONLY $10,000 TOTAL DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Having decided that the trial court erred in not granting a new trial, the Bonds' second assignment of error is rendered moot. Pursuant to App.R. 12(A)(1)(c), we exercise our discretion to decline to determine the error assigned.
The judgment from which this appeal is taken is affirmed on the issue of liability but is reversed and remanded for a new trial on the issue of damages.
BROGAN, J. and WOLFF, J., concur.