OPINION
{¶ 1} This case is before us on the appeal of Deborah Scholz from a decision granting summary judgment in favor of Revco Discount Drug Center, Inc., CJF Ltd., aka CJF Properties, Ltd., and Bates Commercial Realty (Revco, CJF, and Bates, respectively). Scholz filed suit against the Defendants after falling in a parking lot on property that was owned by CJF and managed by Bates. Revco leased a building located next to the parking lot, and operated a CVS drugstore in the leased premises.
 {¶ 2} The fall occurred on January 24, 2000, when Scholz stopped at CVS on her way home from work. The weather was clear and cold, and the parking lot was icy. Although the day was sunny, snow had fallen a few days before. Scholz did not have a problem when she walked from her car to the store. However, she exited in a different direction, down a cart ramp. The ramp was located in front of the CVS, outside the front door. There was also a sidewalk and a fire lane that had yellow striping. When Sholz left the store, she walked in a straight line from the front door to the cart ramp. She had taken about seven steps off the sidewalk into the parking lot before falling. When she fell, she was past the fire lane.
 {¶ 3} When Scholz stepped off the sidewalk and into the parking lot, she could see the surface of the parking lot. Scholz described the ice where she stepped off the sidewalk as different from the rest of the surface of the parking lot. It was a sheet of ice and did not look like many people had driven on it. Scholz could see the sheet of ice before she stepped off the sidewalk.
 {¶ 4} A professional roofing consult (Alfred Alesi) inspected the building and parking lot in October, 2003, or more than three and a half years after the accident. Alesi concluded that the roof was in a rusted condition and was not sound. Alesi also returned to the property in June, 2004, after a hard rain. At that time, the pavement was dry, except for an area of the building where there was an open seam and deteriorated fascia. The wet area was just to the left of the wheelchair (or cart) ramp, and the wet spot was about eight to ten feet in diameter. The spot did not extend beyond the fire lane.
 {¶ 5} Alesi stated that the gutter had been in a failed condition for eight to ten years, allowing water to run out of its seams and down the wood facade rather than into the downspouts. According to Alesi, the wood fascia was bare, and soft wood areas and rotted wood had been present for a long time, around six to eight years. Alesi did not know where the snow or ice was located on the night of the fall, nor did he know what the general prevailing conditions were at the time. Alesi stated that failing to repair or maintain the building left it in an unsafe condition, which could cause an accident, as happened here.
 {¶ 6} The Defendants moved for summary judgment, contending that the ice and snow resulted from natural accumulations for which they could not be held responsible. In addition, the Defendants claimed they were not liable because the icy condition was open and obvious. After considering the evidence, the trial court found issues of fact regarding whether the ice resulted from a natural or an "unnatural" accumulation. However, the court granted summary judgment because the Defendants did not owe Scholz any duty in light of the open and obvious nature of the danger.
 {¶ 7} Scholz now appeals, claiming in a single assignment of error that:
 {¶ 8} "The trial court erred in granting summary judgment [in] favor of the Defendant(s) and against the Plaintiff(s) in that reasonable minds could differ as to whether the Defendant's property had natural or unnatural accumulation of ice and snow on the date of the incident which is clearly a fact question for the jury to decide."
 {¶ 9} After reviewing the record and applicable law, we find that the assignment of error is without merit. Accordingly, the judgment of the trial court will be affirmed.
 I {¶ 10} We review summary judgment decisions de novo, which means that "we apply the standards used by the trial court." Brinkman v. Doughty
(2000), 140 Ohio App.3d 494, 496, 748 N.E.2d 116. Summary judgment is appropriately granted where the trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor."Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66,375 N.E.2d 46.
 {¶ 11} In Armstrong v. Best Buy Co., Inc., 99 Ohio St.3d 79,2003-Ohio-2573, 788 N.E.2d 1088, the Ohio Supreme Court reaffirmed the viability of the open and obvious doctrine as an absolute defense to liability. The court noted that:
 {¶ 12} "in order to establish a cause of action for negligence, the plaintiff must show (1) the existence of a duty, (2) a breach of duty, and (3) an injury proximately resulting therefrom." 2003-Ohio-2573, at ¶ 8, citing Menifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75, 77,472 N.E.2d 707. In applying this standard, the court stressed that "where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." 2003-Ohio-2573, at ¶ 14.
 {¶ 13} On various occasions, we have held that ice and snow are open and obvious dangers for which a property owner is not liable. For example, in Simpson v. Concord United Methodist Church, Montgomery App. No. 20382, 2005-Ohio-4534, we held that summary judgment was properly granted against a plaintiff who had fallen on "black ice" in a parking lot. In this regard, we observed that:
 {¶ 14} "[w]hether the existence of a hazard imposes a duty of care on a property owner depends on the condition from which it arose. If the condition was one known to the invitee or of which he reasonably should have known, that is, one which is open and obvious, and the hazard is one commonly associated with the condition, a particular risk of injury the hazard presents is reasonably foreseeable. Then, the owner or operator of the premises owes no duty to his invitees to cure the hazard or warn his invitees of its risks because, being charged with knowledge that the hazard exists, they may take steps to protect themselves from such risks. However, where the condition is instead latent or concealed, the hazards associated with it cannot be known. The risk of injury the hazard presents is then not foreseeable, and, not being foreseeable, the invitee is assumed to be unable to protect himself from the risks involved. In that circumstance, the law imposes a duty on the owner/operator to cure the hazard or warn of its existence when he created the condition or reasonably should have discovered it." Id. at ¶ 23 (citation omitted).
 {¶ 15} In Simpson, the plaintiff argued that an exception toArmstrong existed, because black ice was hard to see, and because plowing had increased the risk of "unnatural runoff and pooling." Id. at ¶ 27. We rejected this argument, since invitees are charged with knowledge of the hazards and risks of injury created by subsidiary conditions that commonly occur along with natural accumulation of snow and ice. Id. We also noted that while there may have been a triable issue on proximate cause, "the existence of a duty is a preliminary question for the court to determine before the jury may weigh any question concerning its breach and injuries proximately resulting from the breach." Id. at ¶ 30. AccordClark v. B.P. Oil Co., Summit App. No. 21398, 2003-Ohio-3917, at ¶ 11 (rejecting the plaintiff's argument that whether an accumulation of ice was unnatural was a factual question for the jury. The court noted that the open and obvious doctrine is not concerned with causation, but is based on a landowner's duty to persons injured on his or her property).
 {¶ 16} The same reasoning applies to the present case. Whether or not the ice was a natural accumulation is an issue bearing on proximate cause. The ice was not a latent hazard, and was, in fact, a danger that Scholz saw and appreciated. Specifically, Scholz testified that the entire parking lot was icy in most parts, and that the area where she fell was a sheet of ice, just like a skating rink. Scholz also said she was able to see the sheet of ice before she stepped off the sidewalk. Clearly, the ice was an open and obvious danger, and Sholz was well aware of the hazard and risk of injury.
 {¶ 17} In arguing that summary judgment was improper, Scholz relies onCorson v. North American Truck Platform, Montgomery App. No. 19399, 2002-Ohio-6777. In Corson, we held that a landowner has a duty to remove unnatural or improper accumulations when the owner knows or should know that ice and snow "have created a condition that is substantially more dangerous to an invitee than he could reasonably anticipate." Id. at ¶ 11, citing Mikula v. Tailors (1970), 24 Ohio St.2d 48, 263 N.E.2d 316, paragraphs five and six of the syllabus). However, both Corson and Mikula
were decided before the Ohio Supreme Court clarified in Armstrong that many courts have confused the issues of proximate cause and duty. In this context, the Ohio Supreme Court stressed in Armstrong that:
 {¶ 18} "we believe that the focus in these decisions is misdirected. The courts analyzing the open-and-obvious nature of the hazard as an element of comparative negligence focus on whether the plaintiff's negligence in confronting an open-and-obvious danger exceeds any negligence attributable to the defendant. * * * Under this approach, the open-and-obvious rule does not act as an absolute defense. Rather, it triggers a weighing of the parties' negligence. * * *
 {¶ 19} "What these courts fail to recognize is that the open-and-obvious doctrine is not concerned with causation but rather stems from the landowner's duty to persons injured on his or her property. By failing to recognize the distinction between duty and proximate cause, we believe that these courts have prematurely reached the issues of fault and causation." 2003-Ohio-2573, at ¶ 10-11.
 {¶ 20} As an additional matter, Mikula involved a latent defect that could not have been open and obvious to the plaintiff, i.e., the plaintiff had stepped in a seven inch hole that was covered with snow.24 Ohio St.2d at 49. Cf. Simpson, 2005-Ohio-4534, at ¶ 27 (distinguishing Mikula because the hole in Mikula was concealed).
 {¶ 21} Furthermore, in Corson, we held that the property owner was not liable for the plaintiff's injuries. Among other things, we relied on the lack of evidence that the property owner knew or should have known that snow and ice in the parking lot "created a condition substantially more dangerous to an invitee than he could reasonably anticipate." 2002-Ohio-6777, at ¶ 16. In this regard, we stressed that the hazard was open and obvious because the plaintiff had observed the ice before even getting out of his truck. Id.
 {¶ 22} The hazard in the present case was open and obvious, because the Plaintiff saw the ice before stepping off the sidewalk and could reasonably foresee the risk of injury. Consequently, Defendants did not owe the Plaintiff any duty and are not liable for any injury that was caused.
 {¶ 23} Accordingly, the single assignment of error is overruled, and the judgment of the trial court is affirmed.
Donovan, J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).