[Cite as *Watts v. Richmond Run #1 Condominium Unit Owners Assn., Inc.*, 2013-Ohio-2695.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99031**

## RALPH WATTS

PLAINTIFF-APPELLANT

vs.

## RICHMOND RUN #1 CONDOMINIUM UNIT OWNERS ASSOCIATION, INC., ET AL.

DEFENDANTS-APPELLEES

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-762878

**BEFORE:**   Celebrezze, J., Stewart, A.J., and Jones, J.

**RELEASED AND JOURNALIZED:**   June 27, 2013

**ATTORNEY FOR APPELLANT**

Jeffrey D. Lojewski
Berger & Zavesky Co., L.P.A.
614 West Superior Avenue
Suite 1425
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEES**

**For Richmond Run #1 Condominium
Unit Owners Association, Inc.**

John B. Stalzer
Reminger Co., L.P.A.
1400 Midland Building
101 West Prospect Avenue
Cleveland, Ohio   44115

**For Rossoll Landscaping, Inc.**

Sarah A. Miller
Joseph G. Ritzler
Ritzler, Coughlin & Paglia, Ltd.
1360 East Ninth Street
1000 IMG Center
Cleveland, Ohio   44114

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Appellant, Ralph Watts, initiated this appeal from the trial court's grant of summary judgment in favor of appellees, Richmond Run #1 Condominium Unit Owners Association, Inc. ("Richmond") and Thomas Rossoll, d.b.a. Rossoll Landscaping, Inc. ("Rossoll").[1] The trial court found that the winter conditions that caused Watts to fall were open and obvious. On appeal, Watts claims the trial court erred in granting summary judgment. After a thorough review of the record and law, we affirm.

## I. Factual and Procedural History

**{¶2}** Watts filed suit against appellees on August 26, 2011, alleging that he slipped and fell as a result of appellees' negligence in clearing snow from a private street within the condominium development where he resided.

**{¶3}** On January 6, 2011, at about 12:30 p.m., Watts left his home to walk to the mailboxes located by the entrance of his condominium development. He noticed that his driveway was icy and walked with caution to its end and onto the private street that runs through the condominium development. He also noticed that ice and water had accumulated at the edges of the street, creating a hazardous slush. The condominium development lacks sidewalks along the street, so Watts walked in the middle of the street. According to Watts's deposition, he was in the middle of the street walking toward the mailboxes when he heard a car approaching from the rear at a high rate of speed. He

---

[1] Rossoll Landscaping was, according to Rossoll's deposition, incorrectly named as a corporation by Watts, and the contract for snow removal drafted by Richmond refers only to "Rossoll Landscaping." Rossoll indicated he operates his business as a sole proprietorship.

stepped to the side of the street in order to get out of the way of the oncoming car. He stated that he fell because "the snow bank [at the edge of the street] impeded me from getting out of the way * * * which caused me to fall[,]" and that because of the snow plowed at the edges of the street, he "had no escape route." The car stopped and the occupants inquired if Watts needed assistance.

{¶4} Later in his deposition, Watts admitted that he fell at the edge of the street before any snow embankment. He admitted to falling on the slushy ice and water that had accumulated at the edges of the street and never made it as far as the snow embankment, which he estimated was three-to-four-feet high. After he slipped on the slush, he attempted to get up and fell a second time. He sought medical attention and, as a result of his injuries, missed five days of work.

{¶5} Based on the deposition testimony, Richmond and Rossoll separately moved for summary judgment arguing that the accumulation of snow at the edges of the street did not cause Watts to fall. They also argued that the cause of Watts's fall was open and obvious as a natural weather condition one should be accustomed to living in Ohio. Watts opposed summary judgment. On September 14, 2012, the trial court granted Richmond's and Rossoll's motions for summary judgment and issued a lengthy opinion setting forth its rationale a few days later. Watts then appealed to this court assigning four errors.[2]

## II. Law and Analysis

### A. Standard of Review

---

[2] Appellant's assignments of error are included in the appendix.

**{¶6}** All of Watts's assigned errors deal with the grant of summary judgment under Civ.R. 56. This rule provides that before summary judgment is granted, it must be determined that

(1) No genuine issue as to any material fact remains to be litigated;

(2) the moving party is entitled to judgment as a matter of law; and

(3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

**{¶7}** It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 1996-Ohio- 107, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. *Id*. at 293. The nonmoving party must set forth specific facts by the means listed in Civ.R. 56(C) showing a genuine issue for trial exists. *Id.*

**{¶8}** In the present case, Watts contends there are genuine issues of fact relating to the open and obvious nature of the cause of his fall and attendant circumstances that would obviate the application of the open and obvious doctrine.

## B. The Open and Obvious Doctrine

**{¶9}** In his first assignment of error, Watts argues that the trial court erred in applying the open and obvious doctrine to the present case.

**{¶10}** The parties agree that Watts was a business invitee at the time of the accident because he was a resident in the condominium development and was walking on a private street within a common area of the development. "An occupier of premises is under no duty to protect a business invitee against dangers which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. The Ohio Supreme Court went on to classify normal winter weather conditions as obvious dangers. "The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them." *Id.* at paragraph two of the syllabus.

**{¶11}** This rule, as it applies to natural winter conditions in Ohio, is even more encompassing than the general open and obvious doctrine. This is because "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by [them]." *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 1993-Ohio-72, 623 N.E.2d 1175. "Thus, the issue of which party has superior knowledge or a better appreciation of a natural accumulation of ice and snow on the premises is generally

irrelevant, since the invitee is charged with an appreciation of those risks as a matter of law." *Miller v. Tractor Supply Co.*, 6th Dist. No. H-11-001, 2011-Ohio-5906, ¶ 9, citing *Brinkman* at *id*. This has come to be called the "no-duty winter rule."

**{¶12}** In his third assignment of error, Watts argues that the snow embankments are unnatural accumulations and the open and obvious doctrine should not apply.

**{¶13}** There are two recognized exceptions to the "no-duty winter rule" set forth above — the "unnatural accumulation" exception and the "improper accumulation" exception. *Tractor Supply* at ¶ 10-11. "By definition, an unnatural condition is man-made or man-caused. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way." *Mubarak v. Giant Eagle, Inc.*, 8th Dist. No. 84179, 2004-Ohio-6011, ¶ 19, citing *Porter v. Miller*, 13 Ohio App.3d 93, 468 N.E.2d 134 (6th Dist.1983).

**{¶14}** In the present case, accumulations of snow at the edge of the roadway are not unnatural accumulations. The snow banks at the edges of the street are not accumulations in an unexpected place. When trucks plow snow from a street, it goes to the side and accumulates next to the street. This is an expected phenomenon and one often encountered in everyday life in Ohio during winter. *Flint v. Cleveland Clinic Found.*, 8th Dist. Nos. 80177 and 80478, 2002-Ohio-2747; *Hill v. Monday Villas Prop. Owners Assn.*, 2d Dist. No. 24714, 2012-Ohio-836, ¶ 20; *McDonald v. Koger*, 150 Ohio App.3d 191, 2002-Ohio-6195, 779 N.E.2d 1083 (2d Dist.). Plowed snow at the edges of a street in the tree lawn area is a natural accumulation one would expect to encounter.

{¶15} Further, "it is well-settled that '[s]lush is a natural phenomenon of changing weather conditions.'" *Sellers v. Metrohealth Clement Ctr. for Family*, 8th Dist. No. 84092, 2004-Ohio-4235, ¶ 16, citing *Hoenigman v. McDonald's Corp.*, 8th Dist. No. 56010, 1990 Ohio App. LEXIS 131 (Jan. 11, 1990). Even where melting snow from a pile causes ice to accumulate, the resulting slick conditions are still natural accumulations. *Flint* at ¶ 20.

{¶16} "The improper accumulation exception arises when a natural accumulation conceals a hazardous condition, which is substantially more dangerous than conditions normally associated with ice and snow, and about which the owner or occupier has actual or constructive knowledge." *Luft v. Ravemor*, 10th Dist. No. 11AP-16, 2011-Ohio-6765, ¶ 16, citing *Pesci v. William Miller & Assocs.*, 10th Dist. No. 10AP-800, 2011-Ohio-6290, at ¶ 12-13, citing *Mikula v. Tailors*, 24 Ohio St.2d 48, 57, 263 N.E.2d 316 (1970), and *Crossman v. Smith Clinic*, 3d Dist. No. 9-10-10, 2010-Ohio-3552, ¶ 15. However, this exception applies only when the accumulation hides what would otherwise be an open and obvious danger that the landowner knew or should have known about. *Tractor Supply* at ¶ 13.

{¶17} The accumulations of snow at the edges of the street did not conceal an already dangerous condition, and the slush that caused Watts to fall was not concealed by this accumulation. Therefore, this exception does not apply.

{¶18} Even assuming one of these exceptions applied, the accumulation of snow at the edge of the street did not cause Watts to fall. Watts readily admitted that he saw the icy conditions that existed at the edges of the street when he began his trek on the street to

the mailboxes. He further admitted that it was this icy slush that caused him to fall when he moved to the side of the street to avoid the oncoming car.

{¶19} Watts also relies on the contractual duties that Richmond owed through its bylaws and declarations as well as the contract for snow removal between Richmond and Rossoll. Rossoll was required to remove snow from the private street as well as four walkways that run perpendicular to the street to the front doors of condominiums. Watts testified these walkways were not clear at the time of his fall. Assuming a duty exists, whether the walkways were clear or not does not create a genuine issue of material fact. Watts fell on the accumulation of ice and water at the edge of the street created by natural weather conditions that existed whether the walkways were clear or not. Watts admitted to being aware of this hazard. The contractual duty that Watts cites has no bearing on his accident.

{¶20} "To prove a breach in a case where a defendant has assumed a duty to remove snow and ice, the plaintiff must show that the defendant removed the snow and ice in a manner inconsistent with what a reasonable person would have done under similar circumstances — in other words, negligently." *Davis v. Timbers Owners' Assn.*, 1st Dist. No. C-990409, 2000 Ohio App. LEXIS 115, *7 (Jan. 21, 2000), citing *Kinkey v. Jewish Hosp. Assn. of Cincinnati*, 16 Ohio App.2d 93, 95, 242 N.E.2d 352 (1st Dist.1968). In *Davis*, there was no evidence that

> the defendants plowed or piled the snow in a negligent manner. Persons who plow or shovel snow are not negligent merely because ice remains after snow is cleared. And the snow had to be piled somewhere, with a certain natural runoff of water to be expected. See *Hoenigman v. McDonald's Corp.* (Jan. 11, 1990), Cuyahoga App. No. 56010, 1990 Ohio App. LEXIS 131, unreported. * * * Ice and snow are dangerous, but the

danger is the price we pay for living in an area with an ever-changing kaleidoscope of weather.

*Id.*

**{¶21}** Regarding snow and ice removal, a contractor breaches a duty of care if its actions create an unnatural accumulation that substantially increases the risk of injury normally associated with winter accumulations of ice and snow. *Jackson v. J-F Ents.*, 6th Dist. No. L-10-1285, 2011-Ohio-1543, ¶ 14, citing *Zamano v. Hammerschmidt, Inc.*, 6th Dist. No. H-02-031, 2003-Ohio-1618, ¶ 21; *Dunbar v. Denny's Restaurant*, 8th Dist. No. 86385, 2006-Ohio-1248, ¶ 13.

**{¶22}** Here, there is no evidence that Rossoll removed snow in a negligent manner that created a dangerous condition related to the slush at the edge of the street that caused Watts to fall. There is no evidence that a cleared walkway some distance away from the area of Watts's fall would have impacted the situation at all. Watts claims a cleared walkway would have given him an escape route to avoid the oncoming car. However, the photographs submitted by Watts indicate the closest walkway was a good distance away from the spot of his accident. It was not the snow covering the walkway or even the snow at the edge of the street that caused Watts to fall. It was the slush that accumulated at the edge of the street. This was a natural accumulation of snow and ice of which Watts was admittedly aware. Further, the edge of the street was covered in slush, and a cleared walkway would not have offered Watts a way off the street without stepping through the same slush that caused his fall.

**{¶23}** Therefore, the open and obvious doctrine applies to this situation because the weather conditions that caused Watts to fall were natural accumulations of ice and

water at the edge of the street. Appellant's first and third assignments of error are overruled.

## C. The Attendant Circumstances Exception

**{¶24}** Watts also claims that attendant circumstances, namely the car coming toward him, created a risk greater than that normally encountered and should preclude the application of the open and obvious doctrine.

**{¶25}** Attendant circumstances are factors that could lead an ordinary person exercising reasonable caution to fail to discover an otherwise observable hazardous condition. In a given situation, they may create a genuine issue of material fact as to whether a hazard was open and obvious. *Sexton v. Certified Oil Co.*, 4th Dist. No. 11CA3299, 2013-Ohio-482, ¶ 18.

**{¶26}** The phrase refers to all circumstances surrounding the event, such as time and place, the environment or background of the event, and the conditions normally existing that would unreasonably increase the normal risk of a harmful result of the event.

> Attendant circumstances do not include the individual's activity at the moment of the fall, unless the individual's attention was diverted by an unusual circumstance of the property owner's making. Moreover, an individual's particular sensibilities do not play a role in determining whether attendant circumstances make the individual unable to appreciate the open and obvious nature of the danger.

(Citations omitted.) *Id*. at ¶ 18-19.

**{¶27}** "'The law uses an objective, not subjective, standard when determining whether a danger is open and obvious. The fact that appellant herself was unaware of the hazard is not dispositive of the issue. It is the objective, reasonable person that must

find that the danger is not obvious or apparent.'" *Id.* at ¶ 19, quoting *Goode v. Mt. Gillion Baptist Church*, 8th Dist. No. 87876, 2006-Ohio-6936, ¶ 25.

{¶28} Appellant claims a car driving down a street is an attendant circumstance. This is not a factor that would reasonably distract an objective person from discovering a dangerous condition in this case. Watts testified in his deposition that by the time he heard the oncoming car and moved from the center of the street to the edge, he had already observed the dangerous condition that caused his fall. Watts fell despite his observance and acknowledgment of the danger posed. Further, Watts had time to get out of the way of the car. The car stopped next to Watts, and the occupants asked if he needed assistance after his fall.

{¶29} Watts also claims the condition of the unplowed walkways from the street to the adjoining condominiums was an attendant circumstance. In light of Watts's deposition testimony, the condition of these walkways does not constitute a "distraction that would come to the attention of a pedestrian in the same circumstances and reduce the degree of care an ordinary person would exercise at the time." *Sexton,* 4th Dist. No. 11CA3299, 2013-Ohio-482, ¶ 19. Watts admitted he observed the hazardous condition that caused his fall and was not distracted from it at the time. He stated that he stepped carefully into the slush to move to the side of the street to avoid an oncoming car and fell despite the exercise of caution. The arguments Watts now makes do not go to the open and obvious nature of the cause of his fall, but to other circumstances that do not change this court's conclusion that the cause of his fall was indeed open and obvious.

{¶30} Appellant's second assignment of error is overruled.

## D. Assumption of the Risk

**{¶31}** In his fourth assignment of error, appellant raises issues of assumption of the risk. The trial court's decision discusses this as an argument raised by Richmond, but its opinion does not rely on these arguments. The trial court found the accident was the result of open and obvious natural weather conditions. This assignment of error had no impact on the trial court's decision. Review de novo includes independent analysis of the arguments raised below, but this court has already determined that summary judgment was appropriate based on the open and obvious nature of the cause of Watts's fall. Therefore, this assigned error is moot.

## III. Conclusion

**{¶32}** The trial court correctly granted summary judgment in favor of Richmond and Rossoll because the cause of Watts's fall was an open and obvious natural accumulation of slush at the side of the street. Watts observed this dangerous condition prior to falling and recognized the hazard, but slipped despite exercising due caution. Sometimes, "[w]inter is much like unrequited love; cold and merciless." – Kellie Elmore.

**{¶33}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

MELODY J. STEWART, A.J., and
LARRY A. JONES, SR., J., CONCUR

APPENDIX

Appellant's assignments of error:

I.   The trial court erred in granting summary judgments on the grounds that the condition causing the appellant's fall and resulting injuries were open and obvious.

II.   The trial court erred in granting summary judgments even if the open and obvious doctrine does apply because the attendant circumstances surrounding the appellant's fall provide an exception to the open and obvious doctrine, creating an issue of material fact that must be decided by a jury.

III.   The trial court erred in granting summary judgments as genuine issues of fact exist as to whether the appellant's fall and injuries were proximately caused by a natural or unnatural condition.

IV.   Summary judgment is improper where reasonable minds could conclude that appellant did not voluntarily assume a known risk of injury.