[Cite as *Grimberg v. Blackbird Baking Co.*, 2023-Ohio-313.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

ANN MARIE GRIMBERG,  :

    Plaintiff-Appellant,  :

                          No. 111592

    v.  :

BLACKBIRD BAKING
COMPANY, ET AL.,  :

    Defendants-Appellees.  :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 2, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-940054

### *Appearances:*

Randazzo Law, LLC and Russell Randazzo, *for appellant*.

Patrick S. Corrigan, *for appellees*.

EILEEN T. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant, Ann Marie Grimberg ("Grimberg"), appeals from an order denying her motion for summary judgment and granting summary judgment in favor of defendants-appellees, MJK Tavern, Inc. ("MJK Tavern"), Sweet Cheeks,

Ltd. ("Sweet Cheeks"), and MJK-PJK Properties L.L.C. ("MJK-PJK") (collectively "appellees"). She claims the following errors:

1. The trial court abused its discretion in denying plaintiff leave to file an amended complaint and add new parties.

2. The trial court abused its discretion in granting defendants' motion for summary judgment.

3. The trial court abused its discretion in denying plaintiff's motion for summary judgment.

{¶ 2} We affirm the trial court's judgment.

## I. Facts and Procedural History

{¶ 3} Grimberg filed a complaint in the Cuyahoga County Court of Common Pleas seeking damages for injuries she sustained when she slipped and fell on ice and snow after purchasing coffee and pastries from the Blackbird Baking Company ("Blackbird") on December 18, 2019. The parking lot, which is located in Lakewood, Ohio, was owned and managed by Sweet Cheeks.

{¶ 4} Grimberg alleged that snow had fallen in the early morning hours and that the parking lot had not been plowed when she arrived at the bakery at approximately 9:05 a.m. She further alleged that Lakewood Codified Ordinances ("L.C.O.") 521.06 required appellees, as the property owners, to remove or clear away all snow and ice by 9:00 a.m. each day. Because the parking lot was not plowed when Grimberg fell at 9:05 a.m., she claimed appellees' failure to comply with the Lakewood ordinances constituted negligence per se. Grimberg also asserted a separate negligence claim, alleging that appellees failed to properly maintain the

parking lot and that defects in the parking lot created imperfections that allowed ice to form.

{¶ 5} Cincinnati Insurance Company ("Cincinnati") insured the property where Grimberg fell. During discovery, Grimberg learned that appellees had hired Forni Landscaping to plow the parking lot. She also learned that Mary Kay McAndrews ("McAndrews"), the Cincinnati claims representative who was managing the claim, had asked Forni Landscaping to provide information regarding the time it plowed the Blackbird lot on the day of the incident. She also asked Forni Landscaping to provide its insurance information to her.

{¶ 6} After taking the deposition of David Forni ("Forni"), the corporate representative of Forni Landscaping, Grimberg filed a motion for leave to amend the complaint on September 22, 2021. Forni testified during his deposition that, at the request of Ryan Krivosh, Sweet Cheeks's principal, he provided an email to Krivosh in January 2020, regarding Grimberg's slip and fall at the Blackbird parking lot. (Forni depo. p. 49-50.) In the email, Forni stated that his company plowed the parking lot at 5:30 a.m. (Forni depo. p. 54.)

{¶ 7} Surveillance video captured on a Lakewood Police Department camera showed that the lot was not plowed until approximately 9:30 a.m. (Forni depo. p. 53-54.) When Grimberg's lawyer presented this fact to Forni, Forni admitted his statement that the lot was plowed at 5:30 a.m. must have been inaccurate. (Forni depo. p. 54.) Forni further admitted that he did not confirm with George Wilburn ("Wilburn"), the employee who plowed the lot, when he actually completed the

plowing. (Forni depo. p. 21, 53.) Forni explained that the parking lot at Blackbird is one of their "earlier clients" because it opens early. (Forni depo. p. 53.)

{¶ 8} After Forni's deposition was taken, Forni voluntarily produced a series of text messages between himself and Wilburn. In one message, sent at 5:52 a.m., Forni instructed Wilburn as follows: "George you can come in right away please let me know your ETA to shop." Grimberg attached a copy of this text message and the transcript to Forni's deposition to her motion to amend the complaint wherein she alleged that Forni conspired with Krivosh and McAndrews to "deny coverage" for Grimberg's claim. (Motion for leave to file first amended complaint p. 8.)

{¶ 9} Grimberg asserted that based on the email exchange between Forni and Wilburn, "it is clear the content of the email from Mr. Forni that the Blackbird lot was plowed at 5:30 a.m. was either made with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true that knowledge may be inferred." (Motion for leave to file first amended complaint p. 7.) Accordingly, Grimberg sought to add McAndrews, Cincinnati, Forni, and Forni Landscaping as party-defendants and to assert the additional claims of fraud and conspiracy against them. The trial court denied Grimberg's motion to amend the complaint.

{¶ 10} Grimberg and appellees subsequently filed motions for summary judgment on Grimberg's claims for negligence and negligence per se. The parties filed several deposition transcripts in support of their respective motions. Adria Clark ("Clark"), the owner of Blackbird, testified that within an hour of the incident, she went to the location of Grimberg's fall and did not see any puddles or significant

surface deviations in the pavement.  (Clark depo. p.11.)  She also stated that she had never seen any puddles in the parking lot turn into ice.

{¶ 11} Christina Wright ("Wright"), an employee of Blackbird, attended to Grimberg after her fall.  Wright testified that it was snowing lightly at the time of Grimberg's fall, and she observed snow in the parking lot, but she did not see any potholes where Grimberg fell.  (Wright depo. p. 11-12.)  Wright further stated that she parked her car in the same parking lot as Grimberg and that she has never encountered any hazardous conditions in the lot.  (Wright depo. p. 13.)  Charity Thomas, another Blackbird employee, also testified that the parking lot is "usually always plowed" when it snows.  She also attended to Grimberg, and she did not see any surface deviations under the snow.  (Wright depo. p. 11-12.)

{¶ 12} Michael Krivosh ("Krivosh"), the owner of Sweet Cheeks, testified that the parking lot is composed of several parcels with separate owners, but the parcel in which Grimberg fell was owned and maintained by Sweet Cheeks.  Krivosh explained that the two other entities Grimberg sued, namely MJK Tavern and MJK-PJK, have neither an ownership interest in the parcel where Grimberg fell nor do they have any control over the parcel.  Krivosh further stated that Sweet Cheeks has never been cited by the city of Lakewood for the condition of the parking lot, nor has anyone ever been injured in the parking lot prior to Grimberg's incident.  (Krivosh depo. p. 32, 67-70.)

{¶ 13} Tony Bacho ("Bacho"), the owner of Stripe it Now L.L.C., an asphalt maintenance company, testified that his company was retained by Sweet Cheeks to

service the parking lot where Grimberg fell. (Bacho depo. p. 7.) The lot was assessed and serviced in 2016, when a ton of asphalt was put down, a catch basin was repaired, and cracks were filled in. The lot was again serviced in October or November 2018, when asphalt patching and filling was completed. (Bacho depo. p. 12.) According to Bacho, the Blackbird parking lot is serviced annually and, in 2020, it only needed restriping because it was a mild winter and the lot "was in great shape." (Bacho depo. p. 18.) Bacho explained that variations in asphalt surfaces are normal and do not indicate poor maintenance.

{¶ 14} Grimberg submitted the expert report and affidavit of George J. Inglis ("Inglis"), a professional engineer, in support of her motion for summary judgment. Inglis stated in his report that photographs of the parking lot reveal depressions, irregular surfaces with asphalt patches, and some standing water and that the parking lot was not in compliance with 2015 International Property Maintenance Code ("2015-IPMC"). Inglis further opined that the parking lot was in violation of L.C.O. 521.06 because the lot was not cleared of snow by 9:00 a.m. on the day Grimberg fell. Inglis's report states, in relevant part:

> Observations and photo documentation included in Exhibit 2 confirms that the parking areas owned by MJK Tavern, and leased to Blackbird Bakery and other local businesses, were not cleared of snow at the time that Ann Marie Grimberg sustained her injury as required by the City of Lakewood Ordinance 521.06.

{¶ 15} Appellees submitted the expert report and affidavit of Richard Peter Kraly ("Kraly"), an architect and consultant, in support of their motion for summary judgment. Kraly opined that the parking lot was maintained in full compliance with

the city of Lakewood ordinances because L.C.O. 521.06 governs city sidewalks and does not apply to parking lots. Kraly also noted that the city of Lakewood has not adopted and does not enforce the 2015-IPMC. Kraly noted that although the photographs of the parking lot show some standing water, Grimberg did not fall in any of the areas with standing water. Finally, Kraly observed, Inglis criticized (1) other parking lots he mistakenly believed were owned and operated by Sweet Cheeks, and (2) other areas of the Blackbird parking lot remote from the location where Grimberg fell on December 18, 2019. Kraly explained:

> The subject parking lot adjacent to Blackbird contains 85 spaces but only the two rows in the middle, one of which is where Grimberg parked her vehicle, are owned and operated by Sweet Cheeks. The other parcels that contain the majority of the total number of parking spaces are owned and operated by entities other than Sweet Cheeks.

{¶ 16} The court denied Grimberg's motion for summary judgment and granted summary judgment in favor of appellees. Grimberg now appeals the trial court's judgment.

## II. Law and Analysis

### A. Motion to Amend the Complaint

{¶ 17} In the first assignment of error, Grimberg argues the trial court abused its discretion in denying her motion for leave to amend the complaint to add new parties. She contends the trial court abused its discretion in denying the motion because the motion was timely filed and set forth a claim upon which relief could be granted.

**{¶ 18}** We review a trial court's judgment on a motion to amend the complaint for an abuse of discretion. *Franciscan Communities, Inc. v. Rice*, 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, ¶ 32, citing *Wilmington Steel Prods., Inc. v. Cleveland Elec. Illum. Co.*, 60 Ohio St.3d 120, 122, 573 N.E.2d 622 (1991). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463, ¶ 35. In other words, "[a] court abuses its discretion when a legal rule entrusts a decision to a judge's discretion and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, 172 N.E.3d 75, ¶ 19.

**{¶ 19}** This court has held that an abuse of discretion may be found where a trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Vannucci v. Schneider*, 2018-Ohio-1294, 110 N.E.3d 716, ¶ 22 (8th Dist.).

**{¶ 20}** Civ.R. 15(A) governs amendments to pleadings and states, in relevant part:

> A party may amend its pleading once as a matter of course within twenty-eight days after serving it or, if the pleading is one to which a responsive pleading is required within twenty-eight days after service

of a responsive pleading or twenty-eight days after service of a motion under Civ.R. 12(B), (E), or (F), whichever is earlier. In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court shall freely give leave when justice so requires.

"The language of Civ.R. 15(A) favors a liberal policy when the trial judge is confronted with a motion to amend a pleading beyond the time limit when such amendments are automatically allowed." *Wilmington Steel.*, 60 Ohio St.3d at 122, 573 N.E.2d 622.

{¶ 21} However, there is no unconditional or absolute right to amend a complaint once the time specified in Civ.R. 15(A) has passed. *Franciscan Communities, Inc. v. Rice,* 8th Dist. Cuyahoga No. 109889, 2021-Ohio-1729, at ¶ 31. Amendments must be sought in good faith and not for purposes of delay. *Solowitch v. Bennett*, 8 Ohio App.3d 115, 456 N.E.2d 562 (8th Dist.1982); *Franciscan Communities* at ¶ 31, citing *Solowitch*.

{¶ 22} In *Wilmington Steel*, the Ohio Supreme Court adopted the test set forth in *Solowitch* and held that "where a plaintiff fails to make a prima facie showing of support for the new matters sought to be pleaded, a trial court acts within its discretion to deny a motion to amend the pleading." *Wilmington Steel* at 123, citing *Solowitch* at 117.

{¶ 23} The amended complaint sought to add fraud and conspiracy claims against Cincinnati, McAndrews, Forni Landscaping, and David Forni, in his individual capacity. To properly plead a fraud claim, the plaintiff must establish the following elements: (1) a representation (or concealment of fact when there is a duty

to disclose); (2) that is material to the transaction; (3) made falsely, with knowledge of its falsity or with such utter disregard and recklessness as to whether it is true or false; (4) with intent to mislead another into relying upon it; (5) justifiable reliance; and (6) resulting injury proximately caused by the reliance. *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, 929 N.E.2d 434, ¶ 27.

{¶ 24} To properly plead a civil-conspiracy claim in Ohio, the plaintiff must establish the following: (1) a malicious combination of two or more persons; (2) causing injury to another person or property; and (3) the existence of an unlawful act independent from the conspiracy itself. *Woods v. Sharkin*, 8th Dist. Cuyahoga No. 110567, 2022-Ohio-1949, ¶ 103, citing *Syed v. Poulos*, 8th Dist. Cuyahoga No. 99884, 2013-Ohio-5739, ¶ 14, citing *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995). An underlying unlawful act must be committed in order to establish an action for civil conspiracy. *Id.*, citing *Gosden v. Louis*, 116 Ohio App.3d 195, 219, 687 N.E.2d 481 (9th Dist.1996).

{¶ 25} In the motion to amend the complaint, Grimberg alleged that Forni, Forni Landscaping, McAndrews, and Cincinnati conspired to deny coverage to Grimberg. As previously stated, Forni stated at his deposition that the Blackbird parking lot was plowed at 5:30 a.m., but Lakewood police surveillance cameras showed that the parking lot was not plowed until approximately 9:30 a.m. No surveillance footage was produced to conclusively establish the parking was not plowed earlier that morning and that the truck returned at 9:30 a.m. Nevertheless, after his deposition, Forni voluntarily produced a series of text messages between

himself and his employee Wilburn. In one message sent at 5:52 a.m., Forni instructed Wilburn to come to the shop "right away." Grimberg claimed the surveillance video and Forni's text to Wilburn proved that Forni and McAndrews conspired to deprive Grimberg of insurance benefits under the Cincinnati policy that insured Sweet Cheeks' property because Forni's texts contradict Forni's deposition testimony that his company plowed the parking lot at 5:30 a.m. The motion to amend the complaint states, in relevant part: "Either Mr. Forni knowingly falsified the time in the email or was requested by someone to put a false time in the email regarding when his company snowplowed the Blackbird lot." (Motion to amend complaint p. 4.)

{¶ 26} However, nothing in the record, including the cross-examination of Forni, suggests that Forni intentionally misstated the facts. Forni indicated during his deposition that he was not certain what time the lot was plowed, but he believed it was early because the lot is one of the first to be plowed since the Blackbird bakery opens early. (Forni depo. p. 53-54.) It is clear from this testimony that Forni was guessing at the time the lot was plowed based on the company's practice of plowing the Blackbird lot near the beginning of the route. Forni also voluntarily provided the text messages with his employee and made no effort to conceal them. Neither Forni's testimony nor his voluntary disclosure of messages with his employee suggest that Forni knowingly falsified the time the Blackbird lot was plowed. Nor is there any evidence to support Grimberg's allegation that Forni "was requested by someone to put a false time in the email * * *." (Motion to amend complaint p. 4.)

Appellees never raised the timing of the plowing as a defense to liability. To the contrary, they asserted the no-duty winter rule and the open and obvious doctrines as defenses to liability. Therefore, Grimberg cannot establish a prima facie case for asserting fraud and conspiracy claims against Forni, Forni Landscaping, Cincinnati, or McAndrews.

{¶ 27} Moreover, Grimberg has no standing or cause of action to sue Cincinnati or McAndrews even if coverage were denied.[1] It is undisputed that Grimberg is not the holder of the policy that insured the parking lot. And while an insurer has a duty to act in good faith in settling the claims of its insured, it owes no duty to third parties such as Grimberg. *Pasipanki v. Morton*, 61 Ohio App.3d 184, 185, 572 N.E.2d 234 (9th Dist. 1990).

{¶ 28} "A third party has no cause of action for bad faith against the tortfeasor's insurance company." *Id.* "Ohio insurance law 'does not permit an injured party to sue an insurance company, of which it is not an insured, directly without first obtaining a judgment against the tortfeasor.'" *Intercity Auto Sales, Inc. v. Evans*, 8th Dist. Cuyahoga No. 95778, 2011-Ohio-1378, ¶ 22, quoting *Univ. Hosps. Health Sys. v. Total Technical Servs., Inc.*, 8th Dist. Cuyahoga No. 93708, 2010-Ohio-2606, ¶ 11, citing *Chitlik v. Allstate Ins. Co.*, 34 Ohio App.2d 193, 299 N.E.2d 295 (8th Dist.1973), R.C. 3929.06(B) and 2721.02(B). Therefore, Grimberg cannot state a claim for relief against McAndrews or Cincinnati.

---

[1] There is nothing in the record to suggest that coverage has been denied.

{¶ 29} We agree with the trial court that Grimberg failed to establish a prima facie case for fraud and conspiracy against Forni, Forni Landscaping, Cincinnati, or McAndrews. Accordingly, the first assignment of error is overruled.

## B. Summary Judgment

{¶ 30} In the second and third assignments of error, Grimberg argues the trial court erred in granting summary judgment in favor of appellees on her claims for negligence and negligence per se. In both assigned errors, she argues there are genuine issues of material fact as to whether the parking lot was maintained in a safe condition and that these factual issues preclude summary judgment on her claims. We discuss these assigned errors together.

### 1. Standard of Review

{¶ 31} Appellate review of summary judgments is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Pursuant to Civ.R. 56(C), summary judgment is appropriate when (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his or her favor. *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196 (1995), paragraph three of the syllabus; *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 696 N.E.2d 201 (1998). The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact

and that he or she is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).

## 2. Duty of Care

{¶ 32} Grimberg presents two claims: one for negligence and one for negligence per se. Under Ohio law, a negligence claim requires proof of "(1) the existence of a legal duty, (2) the defendant's breach of that duty, and (3) injury that is the proximate cause of the defendant' s breach." *Wallace v. Ohio DOC*, 96 Ohio St.3d 266, 2002-Ohio-4210, 773 N.E.2d 1018, ¶ 22. Although Grimberg pleaded negligence per se as a separate cause of action, negligence per se is a legal doctrine that allows the court to find the duty and breach elements of a negligence action established by virtue of the defendant's act or omission in violation of statute. *Asher v. Glenway Real Estate, L.L.C.*, 1st Dist. Hamilton No. C-180663, 2019-Ohio-4851, ¶ 25.

{¶ 33} Under Ohio law, the scope of a property owner's duty depends on whether the injured person is an invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Regional Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996); *Thayer v. B.L. Bldg. & Remodeling, L.L.C.*, 8th Dist. Cuyahoga No. 105950, 2018-Ohio-1197, ¶ 24.

{¶ 34} An owner or occupier of premises owes its invitees "a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to warn its invitees of latent or hidden dangers." *Armstrong v. Best Buy Co., Inc.,* 99 Ohio St.3d 79, 81, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 5. A property owner owes

no duty to a licensee except to refrain from willful, wanton, or reckless conduct that is likely to injure him. *Gladon*, 75 Ohio St.3d at 317, 662 N.E.2d 287, citing *Soles v. Ohio Edison Co.*, 144 Ohio St. 373, 59 N.E.2d 138 (1945), paragraph one of the syllabus. In other words, licensors are "not liable for ordinary negligence." *Light v. Ohio Univ.*, 28 Ohio St.3d 66, 68, 502 N.E.2d 611 (1986). "[A] licensee takes his license subject to its attendant perils and risks." *Hannan v. Ehrlich*, 102 Ohio St. 176, 131 N.E. 504 (1921), paragraph four of the syllabus.

{¶ 35} Grimberg contends she was an invitee, and appellees argue she was a licensee. An invitee is a person who comes "upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner." *Baldauf v. Kent State Univ.*, 49 Ohio App.3d 46, 47, 550 N.E.2d 517 (10th Dist.1988). A licensee is one "who enters the premises of another by permission or acquiescence, for his own pleasure or benefit, and not by invitation." *Williams v. Cook*, 132 Ohio App.3d 444, 449, 725 N.E.2d 339 (3d Dist.1999), quoting *Provencher v. Ohio DOT*, 49 Ohio St.3d 265, 266, 551 N.E.2d 1257, 1258 (1990).

{¶ 36} Grimberg parked in the lot owned by Sweet Cheeks in order to purchase coffee and pastries at Blackbird. Although Sweet Cheeks does not own or operate the bakery, it leases the property to Blackbird. The parking lot allows customers to shop at the bakery, which pays rent to Sweet Cheeks. Therefore, Sweet Cheeks benefitted, albeit indirectly, from Grimberg's visit to the property. She was, therefore, an invitee, and Sweet Cheeks owed her a duty of care to maintain the property in a reasonably safe condition.

## 3. Lakewood Ordinances

{¶ 37} Grimberg argues appellees violated L.C.O. 521.06(a) because they failed to plow the parking lot before 9:00 a.m. and, therefore, constituted negligence per se. L.C.O. 521.06(a) is titled "Duty to Keep Sidewalks in Repair and Clean," and states, in relevant part:

> (a) Every owner, occupant or person having charge of any tenement building, lot or land fronting any avenue, street, alley or public highway in the City shall remove and clear away, or cause to be removed or cleared away, snow and ice from a path of at least four feet in width from so much of the sidewalk whether or not flagged or paved as is in front of or abuts such building or lot or land.
>
> No person removing snow from any driveway, sidewalk, public or private parking lot or private premises within the City shall deposit the same on the street, pavement, sidewalk or driveway apron of any public street. (Ord. 3-85. Passed 2-4-85.)
>
> (1) Except as provided in subsection (b) hereof, snow and ice shall be removed from all business districts within the City by 9:00 a.m. of each day.
>
> (2) Except as provided in subsection (b) hereof, snow and ice shall be removed from all other sidewalks within the City on the same day as the cessation of any fall of snow, sleet or freezing rail or not later than 8:00 p.m. after the cessation of such fall, whichever period is longer.

{¶ 38} Grimberg contends this ordinance creates a duty requiring landowners in business districts to remove all snow from their parking lots by 9:00 a.m. and that failure to do so constitutes negligence per se. Appellees argue the ordinance only applies to sidewalks as its title implies. A plain reading of the ordinance indicates that it applies to sidewalks, not streets. Although the ordinance prohibits anyone removing snow from driveways and sidewalks from dumping the snow into any public street, the ordinance imposes an affirmative duty on property

owners to clear a path "at least four feet in width" from the sidewalk. It does not provide a similar duty to remove snow from parking lots by 9:00 a.m. Therefore, whether the Sweet Cheeks' parking lot was plowed before or after 9:00 is immaterial; the failure to plow the parking lot was not negligence per se because it did not constitute a statutory violation.

4. Open and Obvious and the "No-Duty Winter Rule"

{¶ 39} As previously stated, appellees owed Grimberg a duty of care to maintain the parking lot in a reasonably safe condition. However, a premises owner is not an insurer of its invitees' safety against all forms of accidents that may occur on the premises. *Shick v. Rite Aid*, 8th Dist. Cuyahoga No. 107805, 2019-Ohio-2238, ¶ 10, citing *Paschal v. Rite Aid Pharmacy, Inc.*, 18 Ohio St.3d 203, 204, 480 N.E.2d 474 (1985). A property owner "is under no duty to protect business invitees from dangers 'which are known to such invitee or are so obvious and apparent to such invitee that he may reasonably be expected to discover them and protect himself against them.'" *Paschal* at 203-204, quoting *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph one of the syllabus. *See also Shick* at ¶ 10.

{¶ 40} In *Sidle*, the Ohio Supreme Court held that normal winter weather conditions are obvious dangers. The *Sidle* Court explained, in relevant part:

> The dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them.

{¶ 41} In *Watts v. Richmond Run #1 Condo. Unit Owners Assn.*, 8th Dist. Cuyahoga No. 99031, 2013-Ohio-2695, this court further explained that the "no-duty winter rule" as follows:

> This rule, as it applies to natural winter conditions in Ohio, is even more encompassing than the general open and obvious doctrine. This is because "everyone is assumed to appreciate the risks associated with natural accumulations of ice and snow and, therefore, everyone is responsible to protect himself or herself against the inherent risks presented by [them]." *Brinkman v. Ross*, 68 Ohio St.3d 82, 84, 623 N.E.2d 1175. "Thus, the issue of which party has superior knowledge or a better appreciation of a natural accumulation of ice and snow on the premises is generally irrelevant, since the invitee is charged with an appreciation of those risks as a matter of law." *Miller v. Tractor Supply Co.,* 6th Dist. No. H-11-001, 2011 Ohio 5906, ¶ 9, citing *Brinkman* at *id*. This has come to be called the "no-duty winter rule."

{¶ 42} Grimberg argues the open and obvious doctrine should not apply in her case because she slipped on unnatural accumulations of ice and snow that were caused by hidden defects in the parking lot. Indeed, there are two exceptions to the "no-duty winter rule." The first exception applies when the property owner or occupier has actual or constructive notice that the natural accumulation of ice and snow has created a "substantially more dangerous" condition than is obvious to an ordinary person without such notice. *Lobas v. FC Midtown L.L.C.*, 8th Dist. Cuyahoga No. 102063, 2015-Ohio-2399, ¶ 7. The second exception occurs when the property owner or occupier actively permits or creates an unnatural accumulation of ice or snow. *Id.*

{¶ 43} "An 'unnatural' accumulation of snow or ice is said to be 'one that has been created by causes and factors other than meteorological forces of nature such

as the inclement weather conditions of low temperature, strong winds and drifting snow.'" *Id.* at ¶ 13, quoting *Flint v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga Nos. 80177 and 80478, 2002-Ohio-2747, ¶ 18. Ice formed by a "freeze and thaw" cycle is not an unnatural accumulation. *Bailey v. St. Vincent DePaul Church*, 8th Dist. Cuyahoga No. 71629, 1997 Ohio App. LEXIS 1884 (May 8, 1997), citing *Hoenigman v. McDonald's Corp.*, 8th Dist. Cuyahoga No. 56010, 1990 Ohio App. LEXIS 131 (Jan. 11, 1990). "By definition, an unnatural condition is man-made or man-caused. Unnatural accumulations are caused by a person doing something that would cause ice and snow to accumulate in an unexpected place or way." *Mubarak v. Giant Eagle, Inc.*, 8th Dist. Cuyahoga No. 84179, 2004-Ohio-6011, ¶ 19.

{¶ 44} Grimberg argues a substantially more dangerous formation of ice and snow occurred in the Sweet Cheeks parking lot because there were depressions in the pavement of which appellees were aware. She also contends that improper maintenance of the parking lot resulted in improper drainage that caused an unnatural accumulation of ice in the area where she slipped. Inglis, Grimberg's expert, describes some of the depressions in his report.

{¶ 45} However, it is well established that "no liability exists for minor imperfections in the surface of a parking lot as those slight irregularities should be reasonably anticipated." *Gordon v. Dollar Gen. Corp.*, S.D. Ohio No. 2:18-cv-939, 2020 U.S. Dist. LEXIS 148839 (Aug. 18, 2020), citing *Neumeier v. Lima*, 3d Dist. Allen No. 1-05-23, 2005-Ohio-5376, ¶ 14, citing *Jeswald v. Hutt*, 15 Ohio St.2d 224, 239 N.E.2d 37 (1968), paragraph two of the syllabus.

{¶ 46} In *Neumeier,* the court explained that "[p]arking lots can develop depressions from freezing and thawing and may also contain drainage areas and sewer lids." *Neumeier* at ¶ 16. Thus, the *Neumeier* Court observed that "as almost every parking lot provides a spawning ground for defects in the blacktop, in the absence of any substantial defect or any unusual attending circumstances, the trial court cannot be faulted for deciding the case as a matter of law." *Id.*, citing *Krause v. Fred W. Albrecht Grocery Co.*, 8th Dist. Cuyahoga No. 74468, 1999 Ohio App. LEXIS 3122 (July 1, 1999), (finding that a jagged circular hole with a one-foot circumference was the sort of irregularity a person could reasonably expect in a parking lot). Due to the imperfect nature of parking lots, "persons cannot expect the same flat surface found on a sidewalk." *Id.*, citing *Sack v. Skyline Chili, Inc.*, 12th Dist. Warren No. CA2002-09-101, 2003-Ohio-2226, ¶ 16.

{¶ 47} In *Mikula v. Tailors*, 24 Ohio St.2d 48, 57, 263 N.E.2d 316 (1970), the Ohio Supreme Court held that a seven-inch hole covered with snow constituted a substantially dangerous condition that precluded application of the no-duty winter rule. In *Longenberger v. Collins Food*, 52 Ohio App.2d 105, 368 N.E.2d 85 (9th Dist. 1977), the Ninth District held that snow concealing a sudden, steep, and unexpected incline also created a substantially dangerous condition. And in *Miller v. Biskind Dev. Corp.*, 8th Dist. Cuyahoga No. 53470, 1988 Ohio App. LEXIS 544 (Feb. 18, 1988), this court held that whether an eight-inch concrete barrier that was obscured by a natural accumulation of snow constituted a substantially dangerous condition was a question for the jury.

{¶ 48} Grimberg has not alleged nor provided evidence of any significant defects akin to the ones described in *Mikula*, *Longenberger*, or *Miller*. As previously stated, Grimberg testified at deposition that she slipped on ice, but she made no mention of any holes or barriers in the area where she fell. Moreover, in *Miller*, this court held that "[e]ven if snow and ice covers a significant defect such as a hole creating a hidden hazard, no liability exists where an injured party had knowledge of the defect equal or superior to that of the owner or occupier of the premises." *Id.*, citing *DeAmiches v. Popczun*, 35 Ohio St. 180, 299 N.E.2d 265 (1973); *see also Bowen v. Columbus Airport L.P.*, 10th Dist. Franklin No. 07AP-108, 2008-Ohio-763, ¶ 12, quoting *Mikula* at 56 ("To the extent that a business invitee and the owner of the premises have equal knowledge of the usual dangers resulting solely from natural accumulations of ice and snow, the latter cannot be charged with actionable negligence with regard to such dangers.").

{¶ 49} Although Inglis stated that Grimberg slipped and fell on "irregular and slippery surfaces," Grimberg did not identify any defect in the parking lot as a cause of her fall. To the contrary, Grimberg alleged in the complaint that the sole cause of her fall was the ice under freshly fallen snow that had not been plowed. The complaint alleges, in relevant part:

13. On December 18, 2019, it snowed in the early morning hours and the temperature was freezing thereby allowing any melted snow to freeze.

14. Upon her arrival at the parking lot for Blackbird, the parking lot had not been plowed to clear snow nor had any salt been scattered to prevent ice from forming.

* * *

17.  Ms. Grimberg proceeded to enter Blackbird as a business invitee and purchased coffee and gift cards.

18.  Ms. Grimberg exited Blackbird and walked back to her car when she fell on ice which had been covered with the new snow from the early morning precipitation.

(Complaint ¶ 13-14, 17-18.)  The complaint does not allege any significant defect in the parking lot or anything that caused an unnatural accumulation of ice or snow.

{¶ 50} When asked at deposition what caused Grimberg to fall, she replied: "I slipped on ice that was underneath freshly fallen snow."  (Grimberg depo. p. 24.) Although Grimberg stated that she had previously observed "divots" or "valleys" and "loose gravel" in the parking, she did not claim that there were "divots," "valleys," or "loose gravel" in the specific area where she slipped and fell.  Nor is there any evidence that the "divots, valleys" or "loose gravel" were anything more than the normal surface depressions that one regularly encounters in parking lots.  In the absence of any evidence that a significant defect created a substantially more dangerous condition that proximately caused her fall, there is no basis on which to apply one of the exceptions to the no-duty winter rule.  Moreover, because Grimberg was aware of the "divots," "valleys," and "loose-gravel" and there is no evidence that appellees had superior knowledge of these alleged defects, appellees cannot be charged with actionable negligence with regard to such "dangers."  *DeAmiches* at 183-184, *Mikula* at 56; *Bowen* at 12.

{¶ 51} After reviewing the evidence in the record, we agree with the trial court that Grimberg failed to establish an actionable claim for negligence against appellees. Accordingly, we overrule the third and fourth assignments of error.

{¶ 52} Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

FRANK DANIEL CELEBREZZE, III, P.J., CONCURS;
MARY EILEEN KILBANE, J., DISSENTS (WITH SEPARATE OPINION)

MARY EILEEN KILBANE, J., DISSENTING:

{¶ 53} I respectfully dissent from the majority opinion with respect to Grimberg's first assignment of error. I would sustain Grimberg's first assignment of error, reverse the trial court's decision denying plaintiff-appellant Grimberg leave to amend her complaint, and remand the case with an order granting her leave to do so.

{¶ 54} Civ.R. 15(A) provides that leave to amend a complaint "shall be freely given when justice so requires." "The spirit of the Civil Rules is the resolution of

cases upon their merits, not upon pleading deficiencies." *Peterson v. Teodosio*, 34 Ohio St.32d 161, 175, 297 N.E.2d 113 (1973). While the decision to grant or deny leave to amend a pleading is within the trial court's discretion, where it is possible that the plaintiff, by an amended complaint, may set forth a claim upon which relief can be granted, "and it is tendered timely and in good faith and no reason is apparent or disclosed for denying leave, the denial of leave to file such amended complaint is an abuse of discretion." *Id.*

{¶ 55} Here, Grimberg's motion for leave to amend her complaint was timely, was her first such request, and was filed months before trial was set to commence. Further, the trial court did not provide any reason on which to base its denial of the motion. Therefore, I would find that the trial court's denial of Grimberg's motion for leave to amend her complaint was an abuse of discretion. I would reverse and remand for the trial court to provide Grimberg leave to file an amended complaint.

{¶ 56} For these reasons, I respectfully dissent.